STROHN and another vs. THE DETROIT AND MILWAUKEE RAILWAY COMPANY.

RAILROAD COMPANY : *Liability beyond its own route : Express oral contract : How far acceptance of receipt with printed conditions binding.*

1. The decision in *Boorman v. Am. Express Co.* (*ante,* p. 152), that the possession by the owner of goods shipped, of the receipt of a railroad or express company, containing conditions restricting its liability as a common carrier, is only *prima facie* evidence that the owner assented to such conditions, and may be contradicted by parol evidence of facts and circumstances attending its receipt, adhered to and followed.

2. If it should appear that the owner examined the receipt, knew its contents, and did not offer to return it, nor otherwise notify the company of his dissent, *it seems* that this would be conclusive evidence of his assent.

3. But if he had previously entered into a special oral agreement with the company for the transportation of the goods, he had a right to presume that the written or printed receipt contained nothing contrary to such agreement, and his failure to make himself at once acquainted with its contents and notify the company of his dissent, should not be held to conclude him.

4. In this case the plaintiffs offered to show such a special oral agreement, and also that the company's receipt was not delivered to them until some days after the goods were delivered to the company and shipped by it under the oral agreement. *Held,* that the evidence should have been admitted to rebut the presumption against them arising from their possession of the receipt.

DOWNER, J., dissents.

APPEAL from the County Court for *Milwaukee* County.

On or about the 14th of November, 1862, the plaintiffs and one Wise (whose interest was subsequently assigned to plaintiffs), delivered to defendant, at Milwaukee in this state, 300 bbls. highwines and 400 bbls. alcohol, which, the complaint alleges, defendant agreed to convey to New York city and deliver there to the consignee, at 90 cents per cwt., *within fifteen days* from the time of such delivery at Milwaukee; the conveyance from Grand Haven, Mich., to New York city to be entirely by rail. It is further averred that said property was intended for exportation to Europe, for sale there, and that bonds had been executed by plaintiffs and Wise to the United States, by the terms of which it was to be exported within thirty days, or the excise duty was to be paid thereon; and this fact was made known to defendant, when the property was delivered to it; that defendant failed to deliver the same within fifteen days, but so negligently conducted itself in relation thereto that the greater portion was not delivered until a long time thereafter; that a large number of the barrels were sent by barges down the Hudson river, and were exposed to the elements; that by reason of the late and irregular arrival of said property, its condition on arriving, &c., it could not be exported within the thirty days, and plaintiffs were compelled to

pay the excise duty, and were put to sundry expenses and suffered losses in various specified ways, to their damage in the aggregate, $3500.

The answer denies that the defendant had any corporate power to contract, or was in the habit of contracting for the carriage of goods eastward from Milwaukee, beyond the city of Detroit, its terminus in the state of Michigan; denies that it received the goods in question under any contract to carry to New York, but on the contrary, alleges that it received them under an express contract which is set forth in the answer, and is as follows: " Received (as agents and forwarders) from owner, the following packages (contents unknown) in apparent good order, viz: [*List of articles, with mark, weight, and the name and residence of the consignee.*] *Rate to New York,* 90 cts. *per* 100 *lbs. Insurance on Lake Michigan.** Marked and numbered as above; to be transported by the Detroit and Milwaukee Railroad Co. to Detroit, and there delivered to the next connecting railroad corporation, or other transportation line, and in like manner to be delivered to each connecting corporation until said goods or merchandise have reached the point named in the receipt. It is hereby stipulated and agreed, that in case of loss or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability shall or may be incurred, that company or party shall alone be held answerable therefor, in whose actual custody the same may be at the time of the happening of such loss. * * It is also agreed between the parties hereto, that the said Detroit and Milwaukee Railroad shall not be held accountable for any damages or deficiency in packages, if receipted at         in good order. [Signed by agent.]" On the back of this receipt or bill of lading were printed certain " general notices and conditions of carriage," among which is a notice that the company " will not be responsible for any loss, damage or detention that

* Words in Italics were *written.*

may happen to goods so sent by them, if such loss, &c., occur beyond their limits." The answer further alleges that the goods in question were, with care and diligence, and without delay or damage, carried by defendant to Detroit, and there delivered to the Great Western Railway Co. of Canada; and denies that at the time mentioned in the complaint, fifteen days was a reasonable time for the transportation of said goods to New York, and on the contrary alleges that the time alleged by the complaint to have been consumed was a just and reasonable one. The other allegations of the answer became unimportant.

The facts as to the amount of plaintiffs' damages were stipulated at the trial, subject to objection as to their relevancy. As to the contract between the parties, the testimony was as follows: Mr. Wise testified that the goods were delivered to defendant by the plaintiff and himself: "Defendants agreed with me to ship and deliver in New York said goods within from ten to fifteen days from the time of delivery of said goods to them; and we were to pay them 90 cents per cwt. for such transportation; the goods to go all the way by railroad from Grand Haven." The witness further testified that he fully explained to defendant's agent that the goods were under bond for exportation within thirty days, and if they failed to arrive the tax must be paid, and the adventure would result in a heavy loss; and that in order to have the goods go exclusively by railroad, and arrive within the prescribed time, they paid nearly double the freight which would have been charged if they had been shipped by rail and water. On cross-examination, being asked "whether the terms on which the goods were to be transported by defendant were committed to writing," he answered: "There was no regular contract made in writing, but Mr. Gray, defendant's agent, noted on an envelope a part of the agreement; the whole agreement was not set forth."

Strohn and another vs. The Detroit and Milwaukee Railway Company.

The plaintiff *Strohn* deposed, that on the 4th or 5th of November,1862, he and Mr. Wise went to defendant's place of business in Milwaukee; found there Mr. Gray, who was then defendant's head officer at that place; told him they had about 500 or 1,000 barrels of alcohol, highwines, tallow, &c., for transportation to New York, through by rail from Grand Haven, and asked him on what terms and in what time he could transport and deliver it in New York; Gray told witness his lowest figure would be 90 cents per cwt. from Milwaukee to New York, by all rail to New York from Grand Haven; that his usual time by that route was from six to seven days; that sometimes it took ten days, and in a very few cases it had taken fourteen to fifteen days. Witness then told Gray that the alcohol and highwines were to be exported, and were bonded for thirty days; that he (witness) had made arrangements for shipping them from New York by sailing vessel by the 1st of December (which was the fact), and it would be a great loss to them if the goods were not in New York so as to be shipped at that time, &c., &c. "Mr. Gray then promised us to deliver the goods in ten days in New York, if we would ship them by his route, and deliver them for transportation here (at Milwaukee) by November 15th; we told him we could ship them by rail and water at half the price he asked, but we would like to have them carried to New York within ten days. On the 6th or 7th of November we went down to the same office, and made the contract with Mr. Gray, and he agreed to take for us 500 to 1,000 barrels of the property already mentioned, at 90 cents per cwt. from Milwaukee, through by all rail from Grand Haven, and to deliver said goods within fifteen days at the outside figure." On cross-examination the witness said: "Mr. Gray did not give us a memorandum at the first conversation, but he gave us the figures when we made the contract, which were endorsed on an envelope." The envelope was put in evidence, and was endorsed as follows:

" 500 to 1,000 bbls. alcohol, highwines, tallow and beef and leaf tobacco, from Milwaukee to New York, at 90 cents per 100 lbs., to be delivered on or before the 15th of November, 1862. Milwaukee, Nov. 7, 1862. [Signed by the agent].' On further cross-examination the witness said : " We got re ceipts from Gray for the property about three or four days after delivering the last lot for shipment. We went several times for them, and they said they were busy and could not make them out, and we finally got them on the 18th of November. We wanted something to show for the property. All the property had left before I got the receipts." The receipts (number not stated) were then put in evidence, all dated November 17th, and in the form alleged in the answer, as above recited, except that on two of them were added to the written portion the words, " all rail from Grand Haven." The witness further said that he did not examine the receipts when he received them, except that he compared the number of packages on them with his books ; that his attention was first led to the printed portion of the same when he was about to commence this suit ; that defendant's agents never called his attention to the printed parts, but always promised to pay this loss down to the last day before the suit was commenced ; that Gray so promised, and often wrote to defendant's agent in Detroit in the presence of the witness, who had seen the letters. The plaintiff *Reitzenstein* testified in a similar manner as to the terms of the contract, and the time when the receipts were received, &c.; an objection to his testimony on the ground that the contract was in writing, being overruled.

The county court sustained *pro forma* a motion for a nonsuit ; and plaintiffs appealed from the judgment.

*F. W. Cotzhausen*, for appellants, to the point that oral proof of the terms of the contract, in addition to the partial memorandum on the envelope, was properly admitted, cited *Ballston Spa Bank v. Marine Bank*, 16 Wis., 120 ; *Hahn v. Doolittle*, 18

id., 196; *Sigerson v. Cushing*, 14 id., 527; *Blossom v. Griffin*, 3 Kern., 569; 1 Greenl. Ev., 282–84. To the point that defendant was bound by the terms of the parol contract, notwithstanding the printed conditions attached to the receipt which was delivered to the plaintiffs four days after defendant received the property, he cited *Blossom v. Griffin, supra*; *McCotter v. Hooker*, 4 Seld., 497; *King v. Woodbridge*, 34 Vt., 565.

*Emmons & Van Dyke*, for respondent, as to the conclusiveness of the bill of lading accepted by the plaintiffs without objection, cited *Cooper v. Tappan*, 4 Wis., 362; *Downie v. White*, 12 id., 176; *Gregory v. Hart*, 7 id., 532; *Heath v. Van Cott*, 9 id., 516; *Racine Co. Bank v. Keep*, 13 id., 209; *Sigerson v. Cushing*, 14 id., 527; *Burhans v. Johnson*, 15 id., 286; *Frey v. Vanderhof*, 15 id., 397; *Ballston Spa Bank v. Marine Bank*, 15 id., 120; *Hahn v. Doolittle*, 18 id., 196; *Blade v. Ch., St. P. &c. R. R. Co.*, 10 id., 4; 1 Greenl. Ev., 371, 305, and p. 33, note 1; *May v. Babcock*, 4 Ham. (Ohio), 334; 3 Cow. & H.'s Notes, 1439; *Wolfe v. Myers*, 3 Sandf. Sup. Ct., 7; *Creery v. Holly*, 14 Wend., 26; Flanders on Ship., 208, 209, secs. 193–195; *Vernard v. Hudson*, 3 Sum., 405; 1 Arnould on Ins., 78; id., 64–65, (chap. III); *The Paragon*, Ware's Rep., 322; *The Reeside*, 2 Sum., 567.

Dixon, C. J. This case is ruled by that of *Boorman v. American Express Company*, [*ante*, p.152]. We there adopted the views of the court in *King v. Woodbridge*, 34 Vt., 565, and held that the possession of the receipt by the plaintiff was, under the circumstances, but *prima facie* evidence of his assent to the terms of the special contract contained in the receipt, and that parol evidence was admissible to show that he never had in fact accepted the paper as a contract binding between himself and the company. Of course, possession of the paper by the party is evidence, more or less strong according to the particular circumstances, of his assent to the conditions contained

in it.  In most cases it may be absolutely conclusive.  If it should appear that he examined it, and knew the contents, and then kept it instead of returning it or offering to return it to the company, or notifying the company of his dissent, such acquiescence would no doubt be construed as conclusive evidence of his assent.  But where the paper is not examined, and the contents not known, I do not think the same consequences follow.  Nor do I think that the party is bound to examine the paper at once, and know the contents, and to return it to the company or give immediate notice of his dissent, at the peril of being held concluded on the ground of acquiescence or neglect.  Having previously entered into a special verbal agreement, he may rightfully assume, in the absence of notice to that effect, that it is embodied in the paper or receipt, or at least that the receipt contains nothing contrary to it.  It is in the nature of a direct fraud or cheat for the company or its agents, after having entered into a verbal agreement, thus wrongfully to insert a contract of an entirely different character, and present it to the party without directing his attention expressly to it and procuring his assent.  It is no answer for the company in such a case to say, that the other party should have been more diligent and watchful, and should have detected the fraud.  So long as he is ignorant of the new conditions, and does not assent to them, the contract in writing is not consummated, and parol evidence may be received.  The case made here, or proposed to be made by the evidence offered and rejected, is like that of *King v. Woodbridge* in almost every material fact and circumstance.  In one particular it is much stronger. . Here the receipts were not delivered to the plaintiffs until some days after the goods were delivered to the company and shipped from Milwaukee under the alleged verbal agreement.  It was then too late for the plaintiffs, had the conditions annexed to the receipts been made known to them, to have repudiated them and sent their goods by some other route.

Nor do I see that the company could have gained anything, had the fraud been immediately discovered, and notice given. It might perhaps have expedited the transportation and delivery of the goods at New York, but that was a matter to be considered when the verbal agreement, if any, was made, and the goods received under it. I think the court below erred in excluding the evidence offered for the purpose of showing that agreement, and that the judgment should be reversed, and a new trial awarded.

*By the Court.*—Ordered accordingly.

DOWNER, J., dissents.