FESSLER *v.* DETROIT TAXICAB & TRANSFER CO.

CARRIERS—CLAIM CHECK—CONTRACTS—LIMITING LIABILITY.

A condition printed on the back of a claim check, limiting the liability of a taxicab and transfer company to $100 unless otherwise specifically agreed in writing, which was not read by plaintiff or her sister or its contents made known to either of them at the time it was delivered, when defendant was engaged by the sister to deliver plaintiff's trunk from the station to the house, did not limit defendant's liability to $100, in an action for the value of the trunk and contents stolen by defendant's driver.

Error to Wayne; Des Voignes, J., presiding. Submitted February 5, 1919. (Docket No. 80.) Decided April 3, 1919.

Assumpsit by Isabell Fessler against the Detroit Taxicab & Transfer Company for the value of a trunk and contents. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. J. Groesbeck,* for appellant.

*Charles P. O'Neil,* for appellee.

MOORE, J. This suit is brought to recover the value of a trunk and its contents. The trunk was at the railroad depot, having arrived there from California. The sister of appellee engaged the agent of the defendant to deliver it at the house. There was given by the defendant to the sister a check reading as follows:

"CLAIM CHECK. Detroit Taxicab and Transfer Co.
"Telephone M-5353. Address 674 Lakeview Ave.
"Baggage checked from residence to destination by presenting railroad ticket Branch Office, 13 Lafayette

See notes in 19 L. R. A. (N. S.) 1006; 34 L. R. A. (N. S.) 818; L. R. A. 1916A, 1273.

Blvd. See that the exact amount as paid is punched out from this ticket.

"READ CAREFULLY CONDITIONS ON THE BACK.
"The amount paid was $1.00.          Number 65641.

(On back)  "This company will not be responsible for loss or injury to baggage covered by this check to an amount exceeding $100.00 or for merchandise, money or jewelry carried by it unless specifically agreed in writing."

Neither the plaintiff nor her sister read the check at the time it was delivered, nor was its contents made known to either of them.

The trunk was given by the defendant to its driver, McLeod, to deliver at plaintiff's home. McLeod stole the trunk and it was never received by plaintiff.

The plaintiff claimed the trunk and contents, including a watch and some jewelry, were worth $665.57, and sued to recover that amount.

The defendant at the close of the testimony offered by the plaintiff asked that a verdict be directed against it for $100, claiming that was the limit of its liability. This motion was denied. The verdict was for the plaintiff for $665.57. The defendant then moved to enter judgment notwithstanding the verdict for $100. This was refused and judgment was entered for the full amount.

We quote from the brief of appellant:

"1. The main question involved in this case is the validity of the limitation of defendant's liability under the facts in the case.

"2. The other questions involved relate to the admission of evidence, the rejection of evidence, the remarks of the court, and the charge of the court on the question of the damages of the plaintiff."

It is the claim of the defendant that it might limit its liability, and that it did so by the giving of the claim check, and that the limitation was fair and reasonable, and that when the plaintiff through her sister

accepted the check she assented to the limitation and is bound by it, citing *Smith* v. *American Express Co.*, 108 Mich. 572, and the cases cited therein. Counsel quote in their brief nearly the whole of that opinion but omit quoting the first part of it which justifies headnotes reading as follows:

"The receipt or bill of lading issued by a common carrier to a consignor, and received by him without objection, and without any insistence upon the common law liability of the carrier, is a contract between the parties and fixes their liability and rights.

"Such contract is not to be construed as in any way limiting the carrier's liability for loss or damage due to the neglect or default of its employees."

The court saying:

"This rule is established by the overwhelming weight of authority."

There is a serious question as to whether the claim check is a bill of lading within the definition in *McMillan* v. *Railroad Co.*, 16 Mich. at page 113, where it is said:

"It remains to be seen whether the conditions embodied in the bills of lading are to be treated as a part of the contract for transportation, and to be regarded as assented to by the consignors, notwithstanding they may not read them.

"A bill of lading proper is the written acknowledgment of the master of a vessel that he has received specified goods from the shipper to be conveyed on the terms therein expressed to their destination, and there delivered to the parties therein designated: Abbott on Shipping, p. 322. It constitutes the contract between the parties in respect to the transportation; and is the measure of their rights and liabilities, unless where fraud or mistake can be shown: Redfield on Railways, 307-309, and notes; Angell on Carriers, § 223. It has acquired from usage a negotiable character, and the carrier may be estopped, as against the indorsee for value, from showing mistakes in giving it. Redfield on Railways, 307."

It will be noticed that the claim check does not describe any goods, does not mention the name of the consignor nor the consignee nor the place of destination, and it would hardly be claimed that it is negotiable.

Much reliance is placed by counsel for the appellant upon the case of *D'Utassy* v. *Barrett,* 171 App. Div. 772 (157 N. Y. Supp. 916), and 219 N. Y. 420 (114 N. E. 786). In that case there was a bill of lading which stated: "In consideration of the rate charged for carrying said property which is regulated by the value thereof * * * the shipper agrees that the company shall not be liable in any event for more than fifty dollars," etc., etc. Clearly a very different case than the one before us.

A case more like the one we are considering is *Adams Express Co.* v. *Berry & Whitmore Co.,* 35 App. D. C. 208 (31 L. R. A. [N. S.] 309). In that case it is said:

"It is evident that the only way in which a carrier may be relieved from its common-law obligation to pay the full value of goods lost through negligence is by means of a special contract with the shipper, as above noted. It is also clear, according to the ordinary rules of construction, that such relief is only to the extent named in that contract. *New York Cent. R. Co.* v. *Lockwood,* 17 Wall. (U. S.) 357. Is it possible for the carrier to extend this doctrine of contractual limitation of liability to cover cases where the goods are converted or embezzled by it? We think not. So great would be the opportunity for fraud that public policy will not suffer a practice so manifestly calculated to invite it. That the shipper, in a particular instance, might be willing to make such concession, does not alter the rule; it is not within the power of the individual to barter away the right to protection inherent in the general public. In discussing this question, the court in the case of *The New England,* 110 Fed. 415, said: 'It should be added, further, that it is doubtful if any limitation which seeks to protect a company, not

from the negligence, but from the theft or conversion, of its servants is consonant with public policy.' Story, in his work on Bailments [8th Ed.], § 32, says: 'In respect to cases of loss by fraud, there is a salutary principle, belonging both to our law and the civil law. It is, that the bailee can never protect himself against responsibility for losses occasioned by his own fraud; nay, not even by a contract with the bailor that he shall not be responsible for such losses, for the law will not tolerate such indecency and immorality that a man · shall contract to be safely dishonest.' See, also, *Alabama, etc., R. Co.* v. *Little,* 71 Ala. 615; *Louisville, etc., R. Co.* v. *Sherrod,* 84 Ala. 178 (4 South. 29); *Zouch* v. *Railway Co.,* 36 W. Va. 524 (17 L. R. A. 116, 15 S. E. 185); *American Express Co.* v. *Sands,* 55 Pa. 140; *Ronan* v. *Railway Co.,* Ir. L. R. 14 C. L. 157; Schouler on Bailments & Carriers, § 20.

"Would it be possible for a carrier, after receiving for transportation goods worth $1,000, to embezzle them, and then plead as a limitation of its liability the fact that the shipper had not stated their value to be more than $50? In other words, Can a carrier engaged in business of a public nature be permitted to justify a conversion of goods intrusted to it, on the ground that its liability is fixed by contract? Such would be the absurd result were appellant's contention carried to its logical conclusion."

See, also, 4 Ruling Case Law, p. 793, and the many cases cited in the note.

The facts disclosed by this record do not limit the liability of the defendant to one hundred dollars. Having reached this conclusion, it is unnecessary to discuss the other questions presented by counsel, though they have not been overlooked.

Judgment is affirmed, with costs to the plaintiff.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.