Allen, J.,
 

 dissenting. I dissent from the opinion of the majority upon two grounds, namely:
 

 (1) Section 4-A of the warehouse receipt does not, by simple insertion in the receipt, the receipt being accepted, constitute a contract under the General Code.
 

 (2) There was no meeting of the minds upon the provision that the warehouseman should be
 
 *84
 
 liable for damages up to the sum of $25, and no more, unless the value thereof was made known at the time of storing and a higher storage rate paid therefor, and hence no contract was made between the parties upon that point.
 

 Does Section 4-A of the warehouse receipt, the receipt being accepted by the bailor, constitute a contract between the parties, when no proof is offered that the bailor was notified of the existence of Section 4-A in the receipt?
 

 I think not, for the following reasons:
 

 First, because the Code does not provide that this extra term in the receipt shall constitute a contract by reason of mere insertion in the receipt;
 

 Second, because, if so construed, the term is contrary to the provisions of the chapter on warehouse receipts, Section 8457
 
 et seq.,
 
 General Code, and impairs the warehouseman’s obligation to exercise reasonable care in the safe-keeping of the goods entrusted to him;
 

 Third, because, if so construed, the term nullifies Section 8477, General Code.
 

 Sections 8458 and 8459 of the General Code read as follows:
 

 Section 8458: “Warehouse receipts need not be in a particular form, but every such receipt must embody within its written or printed terms:
 

 “1. The location of the warehouse where the goods are stored.
 

 “2. The date of issue of the receipt.
 

 “3. The consecutive number of the receipt.
 

 “4. A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order.
 

 
 *85
 
 “5. The rate of storage charges.
 

 “6. A description of the goods or of the packages containing them.
 

 “7. The signature of the warehouseman, which may be made by his authorized agent.
 

 “8. If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership, and
 

 “9. A statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient.
 

 “A warehouseman shall be liable to any person injured thereby for all damage caused by the omission from a negotiable receipt of any of the terms herein required.”
 

 Section 8459: “A warehouseman may insert in a receipt issued by him, any other terms and conditions, provided that such terms and conditions shall not:
 

 “1. Be contrary to the provisions of this chapter.
 

 “2. In any wise impair his obligation to exercise that degree of care in the safe-keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own.”
 

 The provisions of Section 8458 are made for' the benefit not only of the warehouseman, but also
 
 *86
 
 for the benefit of the bailor. This is shown by the fact that the warehouseman is made liable for an omission from a negotiable receipt of any of the terms specified in Section 8458.
 

 Section 8459 is written mainly for the benefit of the warehouseman, to allow him to insert other terms and conditions than those specified in Section 8458.
 

 The second sentence of Section 8459 merely reenacts the decisions upon warehousemen’s liability, for it is generally held that a clause in a warehouseman’s receipt creating exemptions from liability for loss or injury due to particular causes does not exempt from liability in the case of negligence, even though the warehouseman may have contracted for exemption from liability for negligence.
 
 Herzig
 
 v.
 
 New York Cold Storage Co.,
 
 190 N. Y., 511, 83 N. E., 1126; 40 Cyc., page 438;
 
 Gulf Compress Co.
 
 v.
 
 Harrington,
 
 90 Ark., 256, 119 S. W., 249, 23 L. R. A., (N. S.), 1205;
 
 Dieterle
 
 v.
 
 Bekin,
 
 143 Cal., 683, 77 P., 664;
 
 Denver Public Warehouse Co.
 
 v.
 
 Hunger,
 
 20 Colo. App., 56, 77 P., 5;
 
 Minnesota Butter S Cheese Co.
 
 v.
 
 St. Paul Cold Storage Warehouse Co.,
 
 75 Minn., 445, 77 N. W., 977, 74 Am. St. Rep., 515;
 
 Morse
 
 v.
 
 Imperial Grain & Warehouse Co.,
 
 40 Cal. App., 574, 181 P., 815;
 
 Colonial Sugar Co.
 
 v.
 
 Railway Terminal & Warehouse Co.,
 
 191 Ill. App., 40.
 

 Now, nowhere do the above sections of the Code, nor, in fact, do any of the sections of the Code, provide that 'any term outside of those specified for in Section 8458, written by the warehouseman into the receipt, shall constitute a contract with the bailor, no matter whether or not the bailor is
 
 *87
 
 notified of the existence and the content of the term.
 

 The majority opinion avoids this proposition by saying that the statute provides that other terms than those provided for in Section 8458 may be inserted in the receipt, and hence makes these other terms a part of the contract.
 

 But does the statute, upon a fair construction of it, make the extra terms a part of the contract without some assent on the part of the bailor?
 

 Section 8458, General Code, provides specifically what a warehouse receipt must embody, and Section 8459 then goes on to allow the warehouseman to insert other conditions and terms in the receipt, provided that they conform to the provisions of the chapter and to the warehouseman’s obligation to exercise reasonable care.
 

 Since Section 8458 specifies what terms the receipt must embody, and since these specifications are made for the advantage of the bailor as well as of the bailee, the bailor is charged with notice of these terms. But as to terms not specified even as to subjects, as are the terms merely permitted under the authority of Section 8459 and allowed as a benefit mainly to the warehouseman, shall we say that the bailor is charged with notice of these provisions? Is it not more reasonable to hold that the General Code simply permits the warehouseman to insert other conditions in the receipt besides those made obligatory in Section 8458, but that the bailor is not charged with notice of these other conditions unless they are brought to his attention? In other words, I think the essential elements of a simple contract are not changed by
 
 *88
 
 the statute, as to terms permitted under Section 8459. To hold otherwise is to put the bailor at the complete mercy of the warehouseman, and Section 8459 was written with no such purpose.
 

 Second. If the term is so construed, it is contrary to the provisions of the chapter on warehouse receipts and impairs the warehouseman’s obligation to exercise reasonable care in the safe-keeping of goods intrusted to him.
 

 This is clearly shown in the instant case, where rugs of the Value of from $200 to $300 were lost. If the warehouseman can legally limit his liability for these rugs to the amount of $25, as the majority decision holds, he is completely exempted from paying the damage on seven-eighths of the actual value of the rugs, and therefore is practically relieved of his obligation of care which Section 8459 specifically retains.
 

 The warehouseman offered no schedule of higher prices to be paid by the bailor for the storing of goods more valuable than the price named. In fact it was stated in argument that, if goods of greater value than $25 were stored under this contract, and notice of that fact was given, the price to be paid was to be a subject of negotiation. Hence it is evident that Section 4-A is not a term providing for liquidation of damages, or for mere limitation of liability, but is a subterfuge to exempt the warehouseman from liability, and therefore the term of the contract was unlawful under Section 8459, General Code.
 

 Third. If Section 4-A of the receipt is held binding without the assent of the bailor, Section 8477,
 
 *89
 
 General Code, is made nugatory. This section reads as follows:
 

 “A
 
 warehouseman shall he liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.”
 

 Now, in this case, if Section 4-A of the receipt is held to be a binding contract, without notice to the bailor and acceptance of that term as a part of the contract, the warehouseman is held liable only for one-eighth of the damage arising from his conceded negligence. Section 8477 is thus made nugatory by the majority holding in this case.
 

 Coming to the last consideration which compels me to dissent from the majority holding, was there a meeting of the minds upon the terms embodied in Section 4-A?
 

 There is no evidence in the record to indicate that the attention of the bailor was ever called to Section 4-A of the so-called receipt. There is no testimony to the effect that the plaintiff was even told that what he took as a purported receipt' was a contract. It is true that the. word “contract” was written upon the paper, but the warehouseman does not state that his agent ever called attention to that fact. And yet undoubtedly, when the plaintiff sent his agent to the warehouse company to arrange for storage of the goods, there was a statement of terms on the part of the company,
 
 *90
 
 for the goods were actually stored in the warehouse, and the plaintiff paid the deposit required. However, the warehouseman never told the plaintiff or his agent, so far as the evidence discloses, that there was any term in this contract of bailment with regard to valuation of goods in a parcel at higher than $25. The plaintiff was entitled to accept the receipt for what it purported to be, namely, a paper evidencing his title to the goods stored and evidencing his payment of the required storage fees, and is not rightfully bound by this term, of which he was not apprised.
 

 There is authority of weight to this effect in the decisions of our own and other states.
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Hubbard,
 
 72 Ohio St., 302, 74 N. E., 214, specifically recognizes this doctrine, for the court, at page 316 (74 N. E., 218) of the opinion, quotes with approval the doctrine that:
 

 “While a common carrier cannot relieve himself to any extent by special contract from losses occasioned by his own neglect, he may by ‘contract restrict his liability as an insurer against losses arising from mistake, or unavoidable accident against which human prudence could not provide.’ This, of course, does not include the right of a carrier to arbitrarily limit liability for either acts of negligence or the amount of liability in case of loss of or damage to the property consigned. Nor does it extend to mere notices given by the carrier to the shipper, that a limited liability is being contracted for when the shipment is made. The transaction must amount to a contract on the subject, wherein the minds of the parties meet as in the making of other contracts.”
 

 
 *91
 
 Elliott oil Contracts, Vol. IV, Section 3099, reads in the closing sentences as follows:
 

 “No warehouseman may by contract relieve himself from the consequences of his negligence. It is possible, however, that he may limit the amount for which he is liable, by an express contract, the provisions of which have been fairly accepted, with notice, by the bailee.”
 

 It is held in this state that words on a railroad ticket or baggage check limiting the liability of a carrier to a specific amount for loss of baggage are not binding on a passenger unless with knowledge of such limitation he agrees to it.
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Campbell,
 
 36 Ohio St., 647, 38 Am. Rep., 617.
 

 Innumerable cases may be cited to the same doctrine from important state jurisdictions in the United States, a few of which are as follows:
 
 Springer
 
 v.
 
 Westcott, Pres. of Westcott Express Co.,
 
 166 N. Y., 117, 59 N. E., 693;
 
 Morgan
 
 v.
 
 Woolverton,
 
 136 App. Div., 351, 120 N. Y. S., 1008;
 
 Strong
 
 v.
 
 Long Island Rd. Co.,
 
 91 App. Div., 442, 86 N. Y. S., 911, 912;
 
 Grossman
 
 v.
 
 Dodd, Treas. Dodd & Childs’ Express,
 
 63 Hun, 324, 17 N. Y. S., 855, affirmed 137 N. Y., 599, 33 N. E., 642;
 
 Limburger
 
 v.
 
 Westcott,
 
 49 Barb., (N. Y.), 283;
 
 Prentice
 
 v.
 
 Decker, Treas. Westcott’s Express Co.,
 
 49 Barb., (N. Y.), 21;
 
 Ross
 
 v.
 
 Maine Cent. Rd. Co.,
 
 114 Me., 287, 96 A., 223;
 
 Hill
 
 v.
 
 Adams Express Co.,
 
 82 N. J. Law, (53 Vroom), 373, 81 A., 859;
 
 Cohen
 
 v.
 
 U. S. Express Co.,
 
 81 N. J. Law, (52 Vroom), 355, 79 A., 1053;
 
 Hayes
 
 v.
 
 Adams Express Co.,
 
 73 N. J. Law, (44 Vroom), 105, 62 A., 284;
 
 Noonan
 
 v.
 
 Wells-Fargo & Co.,
 
 68 Misc. Rep., 322, 123 N. Y. S., 903;
 
 *92
 

 Blossom
 
 v.
 
 Dodd, Pres. Dodd’s Express,
 
 43 N. Y., 264, 3 Am. Rep., 701;
 
 Madan
 
 v.
 
 Sherard, Jr.,
 
 73 N.Y., 329, 29 Am. Rep., 153;
 
 Southern Express Co.
 
 v.
 
 Moon,
 
 39 Miss., 822;
 
 Wise
 
 v.
 
 Atlantic Coast Line Rd. Co.,
 
 101 S. C., 510, 86 S. E., 22;
 
 Wichern
 
 v.
 
 U. S. Express Co.,
 
 83 N. J. Law, (54 Vroom), 241, 83 A., 776;
 
 John Hood Co.
 
 v.
 
 American Pneumatic Serv. Co.,
 
 191 Mass., 27, 77 N. E., 638;
 
 Walker
 
 v.
 
 Platt,
 
 34 Misc. Rep., 799, 69 N. Y. S., 943;
 
 Boorman
 
 v.
 
 American Express Co.,
 
 21 Wis., 152;
 
 Strohn
 
 v.
 
 Detroit & M. Ry. Co.,
 
 21 Wis., 554, 94 Am. Dec., 564.
 

 The doctrine in these cases is all to the same effect, namely, that there has been no meeting of the minds upon the term embodying the limitations, and hence there has been no contract upon that term. Thus in
 
 Bennett
 
 v.
 
 Virginia Transfer Co.,
 
 80 Misc. Rep., 222, 140 N. Y. S., 1055, the court says:
 

 “It is now well established by a multitude of decisions that an express company may limit its liability for failure to deliver goods intrusted to it, if the contract of carriage provides for its limitation. In every case where such limitation is urged, the express company must establish that a special contract for this purpose was made. It is elementary that a contract arises only where both parties have assented to its terms. No contract can arise where one party did not manifest in some way his concurrence in the terms proposed. Consequently, where the limitation is contained in a receipt, and the consignor accepts the receipt without knowledge or notice that it contains a contract of carriage, no special contract is accepted by him; on the
 

 
 *93
 
 other hand, where the consignor accepts a paper which he knows contains a contract of carriage, he impliedly agrees to all its terms, even though he does not read it. The test in all cases is, not whether the consignor read the limitation, but whether he knowingly entered into a special contract of carriage, and thereby impliedly agreed to all its terms.
 
 Noonan
 
 v.
 
 Wells-Fargo & Co.,
 
 68 Misc. Rep., 322, 123 N. Y. S., 903. In this case the paper received' by the plaintiff does not show that any special contract of carriage was made.”
 

 This doctrine does not now obtain with regard to interstate carriers, which are governed by the schedules on file with the Interstate Commerce Commission, and by the Interstate Commerce Law (U. S. Comp. St., Section 8563
 
 et seq.);
 
 but its reasoning applies directly in the instant action, which is brought, not against a common carrier in interstate traffic, but against a warehouseman, who does not fall within the provisions of the Interstate Commerce Act.
 

 To the same effect is a Supreme Court decision from the state of Michigan
 
 (Fessler
 
 v.
 
 Detroit Taxicab Co.,
 
 204 Mich., 694, 171 N. W., 360, 5 A. L. R. , 983), wherein the court holds that the placing by a baggage transfer company of a notice on the back of its claim checks, that it will not be liable for loss of baggage in excess of a specified amount, does not relieve it from liability for the full value of baggage stolen by its agent.
 
 Healy
 
 v.
 
 N. Y. C. R. Co.,
 
 210 N. Y., 646, 105 N. E., 1086, and
 
 Long-well Transfer Co.
 
 v.
 
 Elliott,
 
 (Tex. Civ. App.), 267 S. W., 346, announce the same decision upon similar facts.
 

 
 *94
 
 These decisions, based upon fundamental principles of contract, it seems to me are not answered either in the brief of the plaintiff in error or in the majority opinion of this court.