## Crutchfield v. Robinson.

(Decided March 27, 1925.)

### Appeal from Scott Circuit Court.

1. Bills and Notes—Failure of Payee to Comply with Collateral Obligation to Maker Held to Constitute Defense to Suit on Note by Purchaser with Notice.—If plaintiff, when purchasing note, knew of payee's collateral obligation to maker, failure of payee to comply therewith would constitute as effectual a defense to suit on note by plaintiff against maker as to suit by payee.

2. Bills and Notes—When Purchaser's Representations of Payee's Financial Condition a Defense, Stated.—If one, purchasing note falsely represented payee's financial condition to maker and as result thereof maker accepted collateral obligation of payee, who failed to carry it out and was insolvent, such facts constituted defense to suit on note by plaintiff, if maker took proper steps to avail himself of the collateral obligation, but not otherwise, in view of statute of frauds, Ky. Stats., section 470, subsection 4.

3. Bills and Notes—Estoppel by Renewal of Note Held Not Avoided by Representation then Made.—Where payee of note given in payment of stock by separate instrument agreed to return amount of note if maker was dissatisfied and sold note to one who made false representations to maker as to payee's solvency, estoppel by renewal of note held not avoided by purchaser's statement at that time that payee would within a short time be able to restore amount paid.

4. Corporations—Pledge of Stock for which Note Given Held Waiver of Maker's Defense to Note.—Where payee of note given for stock agreed to return amount within stipulated time upon maker's election not to hold stock, maker's pledge of stock to another after expiration of stipulated time constituted a waiver of benefits of collateral agreement notwithstanding he had matured his rights to such benefits by taking necessary steps.

LLEWELYN F. SINCLAIR for appellant.

BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the latter part of 1919 there blew into the little village of Stamping Ground, in Scott county, one E. Bryant Crump, who, like many others of his clan, was the forerunner of immediate fortunes to all those who would purchase his recipes. His prescription at the time was the selling of stock in the Crump Oil & Gas, Company, a creature of his own manufacture and bearing his distinguished name, to his selected favorites. He chose as the recipient of, about his first acquaintance in that confiding village, the pastor of one of the leading churches in the town, whom he at once convinced that there was "millions in it." The enthusiasm of the minister not only led him to subscribe for shares but also to exultantly scatter his stimulating confidence in the scheme among the inhabitants of the village and the surrounding neighborhood and it soon became the feeling that everyone would be rich in the near "bye and bye." The expertness of Crump was further displayed when with the pastor he selected as his office and headquarters desk room in the office of appellant and plaintiff below, P. H. Crutchfield, who was the leading physician in the village. Business picked up at once and within a short while defendant and most of his neighbors were crowding the little office to get in on the ground floor and to reap the rewards of the ever vigilant. As a consequence, he contracted the fever, and on February 24, 1920, he purchased ten shares of the stock of the par value of $100.00 each and executed his note to Crump for the sum of $1,000.00, due one year thereafter, but no stock was issued to him until some time later. At the same time, as a kind of sauce for the bait, Crump gave his personal obligation by separate writing to defendant, which was couched in these words: "I personally agree to return the within $1,000.00, together with 1 per cent per month on the investment at the end of six months, should B. G. Robinson elect not to hold his stock longer with the Crump Oil & Gas Company. It is understood that the said Robinson is to give twenty days' notice of his desire to return the stock should he desire to return same at the end of six months. Now this is a full and complete contract. This February 24th, 1920." The note was a negotiable one and was within the provisions of our Negotiable Instruments Act, and within three days after its execution it was sold to plaintiff by Crump for its face value.

Later, and within two or three months, quite a delegation of the newly acquired stockholders, headed by Crump, visited the scene of the operations of the company, which was in Warren county and about three miles from the city of Bowling Green. Defendant was a member of that delegation and he and the others became as much saturated with enthusiasm as was the leasehold premises with flowing oil. After taking their picture, with defendant and others on top of a filled and overflowing tank, they returned to their home in Stamping Ground and held a meeting, at which various members of the visiting delegation, including defendant, made speeches in which they reported the discovery of the financial El Dorado and many new subscribers were obtained and other former ones increased their subscriptions and defendant doubled his. Matters progressed smoothly with everything to sustain the original enthusiasm, except the receipt of dividends, but they were to be forthcoming and defendant and his associates, including the parties hereto and the pastor, reveled in visions of unlimited ease and luxury which they all anticipated when the time came to divide the melon. However, defendant did not pay his note when it became due and he renewed it for another eight months. It was neither then nor thereafter paid and plaintiff filed this action in the Scott circuit court to recover thereon.

The answer admitted the execution of the note and alleged that plaintiff was not a purchaser of it in good faith but that he had knowledge of the personal obligation of Crump, *supra,* and that defendant within the time stipulated therein availed himself of its benefits by demanding of Crump to comply with those stipulations and that he had failed and refused to do so, although at that time no stock had been delivered to defendant nor until some time thereafter, when he received it and later deposited it as collateral security in a bank.

It was furthermore alleged as a defense that plaintiff had fraudulenty represented to defendant that he (plaintiff) had personally investigated the financial standing of Crump and found him to be perfectly solvent and that relying on that representation, which he alleged was false and fraudulently made by plaintiff, he accepted Crump's personal obligation as an inducement to purchase the stock and but for which he would not have done so. He also alleged that Crutchfield and Crump were partners in the sale of the stock and that the former, by

reason of that fact, was responsible for Crump's representations and assumed obligations in the sale of the stock, but which latter is not insisted on, nor was it sustained by the proof. There were no allegations that the stock was worthless or impaired, or that it was not worth par at the time defendant purchased it; nor was any fact averred to show that the corporation was not then solvent. Neither was it attempted to be pleaded that Crump represented the possession of any assets by the corporation which it did not own. In fact, no misrepresentations by Crump, plaintiff, or anyone else concerning the then financial standing or even prospects of the company, were relied on in any manner.

The sole fraud charged in the answer consists in plaintiff's alleged false representation as to the solvency of Crump. Appropriate pleadings made the issues and after two mistrials, due to the failure of the jury to agree, a third one resulted in a verdict in favor of defendant, which the court declined to set aside on a motion for a new trial, and from the judgment rendered thereon dismissing the petition plaintiff appeals, complaining of a number of errors, none of which we think is of sufficient materiality to deserve consideration, except those in the instructions about which complaint is made.

Clearly, the only competent defenses interposed were: (1) Whether plaintiff knew of the collateral contract executed to defendant by Crump, at the time the former purchased his stock, and if so, then (2), whether defendant took the proper steps to avail himself of that right according to its express requirements, *i. e.*, by giving to Crump within the six months twenty days' notice of his intention to surrender the stock, *and at the expiration of six months* to then demand of him a fulfillment of his obligation; and to them we will briefly direct our attention.

There was sufficient evidence to sustain a finding that plaintiff, when he purchased the note, knew of the execution of Crump's collateral obligation to defendant which, if true, made the failure to comply with that writing on the part of Crump as effectual as a defense in this suit by plaintiff as it would be if the suit were instituted by Crump, and it was proper for the court, as it did, to submit that issue to the jury, but it did so with such qualifications, as we shall hereinafter see, as to render the instructions upon that issue, as a whole, erroneous and prejudicial. There was also sufficient testimony to find

that plaintiff represented to defendant the financial condition of Crump and if he knew that representation was false and as a result thereof defendant in reliance thereon accepted the collateral obligation Crump and he, upon proper demand, declined to carry it out, followed by defendant's inability to force him to do so because of his insolvency, it would constitute a defense to this suit on the note. But on such issues, as we have qualified them, were submitted to the jury by any instruction and it was authorized to return a verdict for defendant if it believed that plaintiff fraudulently represented to defendant the financial standing of Crump, regardless of whether defendant himself complied with the terms of that agreement so as to avail himself of Crump's obligations therein.

Manifestly, defendant could not enforce against plaintiff a compliance with those obligations on the part of Crump if the latter for any reason refused to do so, since, in that event, plaintiff would be answering for the defaults of another without having incurred them in writing as required by subsection 4 of section 470 of our present statutes, commonly known as the Statutes of Frauds. If, however, defendant took the necessary steps to avail himself of Crump's collateral obligations and the latter was unable to comply therewith because of insolvency then the defendant, we again repeat, might avail himself of those facts *as a defense* to this suit *by plaintiff* on the note, provided, the latter made the false representations relied on.

It, therefore, will be seen that the issues for the determination of the jury upon the matters thus far considered were: Whether plaintiff had knowledge of the collateral agreement at the time he purchased the note? and, if so, did defendant before or at the time of the expiration of six months make the proper request (after prior twenty days' notice) and demand of Crump to avail himself of the benefits of that agreement? and, if so, was he deprived of a compliance with that agreement by Crump because of the latter's insolvency? for if he was solvent plaintiff made no false representations. An affirmative answer to all three of those inquiries would authorize a verdict for defendant, but a negative answer to either of them would compel a verdict for plaintiff, since it requires no argument to show that however insolvent Crump may have been defendant cannot rely on his collateral agreement,

unless he took the necessary steps within the proper time to avail himself of it. A failure to do so would constitute a waiver of that agreement which plaintiff may rely on the same as could Crump if *he* still owned the note and had brought the action. Therefore, it makes no difference, so far as its nonavailability as a defense herein, as to whether plaintiff did or not make the false representations relied on if, as a matter of fact, defendant has waived his rights under the contract by not appropriately insisting thereon.

To insert the instructions herein would unduly lengthen this opinion, as well as serve no useful purpose. It is sufficient to say that, as framed, they were both erroneous and confusing and did not submit the issues as above outlined and authorized a verdict for defendant under erroneous assumptions of his rights arising from the facts disclosed by the record.

An estoppel against defendant relying on the matters he pleaded in defense was set up in plaintiff's reply and it consisted of defendant's renewal of the note at the expiration of about thirteen months after it was executed and about thirty days after it became due. In avoidance of that estoppel defendant rejoined that ''The plaintiff expressly represented to him (at the time of the renewal) that the said Crump was making arrangements to pay said contract mentioned in defendant's answyer (the collateral one) and would be ready to do so in a few days,'' and because of that statement he was induced to execute the renewal note. That avoidance was put in issue and defendant's testimony thereon was that he had not heard of the transfer of the note by Crump to plaintiff and that one morning the latter called him in his office and ''I went in there to his office and he showed me this note and wanted to renew it. I said, 'Doctor, you know I have notified Crump that I want my money back.' He said, 'That will be all right, Ben; you know he will make a settlement in a short time.' He wanted me to make the renewal note to him. I told him, 'No, make it as before,' . . . He told me at the time, 'Now in just a short time he (Crump) is going to pay your money back in dividends, or something like that.' Every few weeks he would tell us that.''

Plaintiff denied any such statements or conversations by him with defendant, but, if they were undisputed, we are unable to see wherein they constituted a legal avoidance of the pleaded estoppel. It will be observed that it

is neither alleged nor proven that plaintiff, at the time the note was renewed, made any agreement with defendant as an inducement for the renewal that his previously acquired rights against Crump, under the collateral contract, if he had acquired any, should be *preserved* as to the renewal note. The only thing pleaded or testified to by defendant, as having been said plaintiff at the time, was but the expression of an opinion by him that Crump would within a short time be able to restore the amount paid for the stock in the way of dividends. But, even if he had gone so far as to guarantee payment by Crump, then, as we have hereinbefore seen, he would not be bound thereby because his promise was not in writing, duly executed by him. However, for the purposes of this case we need not consider the latter statement but base our conclusion solely upon the ground that plaintiff's alleged statements at the time were not sufficient to avoid his pleaded estoppel.

Another fact appearing in the record and to which we have heretofore incidentally referred, is that there was some evidence that the defendant after he procured his stock certificate appropriated it to his own use by pledging it as collateral security to a note in bank. If that was done after the expiration of the six months from the date of the original note, it would constitute a waiver of the benefits of the collateral contract notwithstanding defendant may have matured his right in those benefits by taking the necessary steps therefor. Surely, it will be conceded that plaintiff, under such circumstances, had the same right to rely on such waiver as did Crump, if he had not transferred the note; and we take it that no one would question *his* right to rely upon those facts as a waiver of the benefits arising under his collateral contract. After the stock was pledged an innocent third party acquired rights in and to it as well as its possession. Therefore, Crump could not obtain a return of the stock after complying with his collateral contract and which right to its return was expressly stipulated for therein.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial, and for proceedings consistent with this opinion.