## Davidson v. First National Bank of Georgetown, et al.

(Decided December 18, 1925. Rehearing denied March 26, 1926.)

### Appeal from Scott Circuit Court.

1. Corporations—Receipt Given by Payee of Note Held to Constitute Valid Defense to Note in Hands of Original Payee if Required Notice was Given.—Where person purchasing stock gave note to seller, receipt given him by such seller, promising to return money

at end of 12 months if maker of note should for any reason desire it, constitutes valid defense to note in hands of original payee if notice therein required was given in time.

2. Bills and Notes—On Showing by Maker of Infirmity in Note, Indorsee Held to have Burden of Proving that it was Holder in Due Course.—Note given for corporate stock and agreement of payee to return money on election of buyer to rescind constituted one transaction, and when buyer, sued on note, presented evidence that he had elected to rescind, and there was issue whether indorsee was 'innocent holder in due course, without notice, under Negotiable Instruments Act (Ky. Stats., section 3720b-59) indorsee had burden of proving that it was innocent holder and peremptory instruction for it was error.

3. Fraud—Fraud in Securing Note Held for Jury.—In cross-action for fraud and deceit; evidence of fraud and deceit in securing execution of note held sufficient to go to jury.

4. Fraud—Maker of Notes Held Entitled to have Issues of Cross-Action for Fraud Submitted to Jury.—In action by indorsee bank on notes, if bank should show to satisfaction of jury that it was innocent holder in due course, issues, in maker's cross-action against officer of bank for fraud and deceit, inducing execution of note, should be submitted to the jury.

5. Fraud—Fraudulent Representations as to Matter in which Defendant has no Interest Actionable.—When one making material representations as to matter in which he has no direct interest has actual knowledge that representation is false, or has no reason to believe in good faith that it is true, or makes it in reckless disregard of truth, he is liable to party who, in reliance thereon, takes position resulting in damages.

6. Frauds, Statute of—Statute of Frauds Held Not to Apply to Cross-Action by Maker of Notes, Suing on Theory of Fraud to Hold Indorsee Primarily Responsible to Bank Suing Maker.—In action by bank, holder of notes, against maker, statute of frauds does not apply to cross-action by maker, suing on theory of fraud to hold indorsee of notes, president of bank, from whom bank obtained them, primarily responsible to bank.

7. Bills and Notes.—Renewal of notes did not waive fraud practiced on maker to secure original notes, in view of agreement to contrary.

8. Banks and Banking—If Bank President Acted Solely for Himself in Becoming Owner of Notes, Which he Thereafter Discounted to Bank, His Knowledge is Not Imputable to Bank, with which he was Dealing at Arm's Length.—In action by bank on notes, defended on ground of fraud practiced on maker by president of bank and another, knowledge of president as an individual is not imputable to bank, if in becoming owner of note he acted solely for himself.

LESLIE W. MORRIS and HOBSON & HOBSON for appellant.

JAMES BRADLEY and BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

With some variations this is a companion case to
that of Crutchfield v. Robinson, 208 Ky. 354.

The same E. Bryant Crump mentioned in that opin-
ion, at about the same time and under similar circum-
stances, sold upon two different occasions shares of stock
in the Crump Oil & Gas Company to appellant David-
son, the notes executed for which are the subject of this
litigation.

On March 19, 1920, appellant purchased from Crump
$1,000.00 worth of shares in that corporation, and in
payment for same executed and delivered to Crump his
negotiable note for $1,000.00, payable one year thereafter
at a Georgetown bank, and bearing interest from date;
and thereafter on the 9th day of April, 1920, he again
purchased from Crump another $1,000.00 worth of the
stock for which he also executed his negotiable note to
Crump payable in twelve months and bearing interest
from date. The first transaction occurred at the home
of appellant near Stamping Ground in Scott county, and
previous to the meeting at Stamping Ground hereinaf-
ter referred to, but the second note was executed a day
or two after that meeting.

Upon each occasion Crump executed to appellant
the following receipt:

"Received of J. E. Davidson $1,000.00 for 1,000
shares Crump oil and gas stock.
"SIGNED, E. BRYANT CRUMP, Pres."

Then on the back of that receipt appears the follow-
ing:

"I personally agree to return the within
$1,000.00, together with one per cent per month from
date hereof, if at the end of 12 months said J. E.
Davidson should for any reason desire the return of
his money. It is hereby agreed that the maker of this
contract is to have 20 days' notice should Davidson
not elect to longer hold his stock in the Crump Oil
and Gas Company.
"Signed, E. BRYANT CRUMP."

Each of the two notes within a short time thereafter
were sold to J. D. Grover, who before the maturity of
either of them sold them to the appellee bank. Grover
was the president of the bank and when the notes fell

due that institution notified appellant, and when he went to the bank its officers desired him to renew the notes and make the renewals payable to the bank itself. This appellant declined to do, but did renew the notes and make them payable to Crump, and paid the interest which had accrued on the original notes.

However, some five or six months after the execution of the original notes, and within the one year specified in the, collateral contract, appellant by mail notified Crump of his dissatisfaction with the purchase of the stock and demanded the return of his notes under the terms of the agreement. At the time this letter was written appellant does not appear to have known that the notes had been negotiated, but at any rate he never heard from his letter. Appellant's claim is that when he renewed the two notes and paid the accrued interest on the old ones he told the cashier of the bank of this collateral agreement between him and Crump, and renewed them with an understanding between him and the cashier that their renewal should not affect any defense that he might have had against the original notes.

When the two renewal notes fell due the bank brought this action on them; and defendant in his answer sets up the consideration for which they were each given and alleges that in each instance as an inducement to him to buy the oil stock, and to execute the notes therefor, and as a part of the contract of purchase Crump simultaneously executed and delivered in each instance the receipt and contract above copied, which are identical except as to date. He then alleges that before the expiration of twelve months from the execution and delivery of the collateral contracts he gave Crump the required notice of his desire not to hold the stock, and a request for the cancellation of his notes, and offered to surrender the stock certificates for cancellation, and that Crump had failed to carry out the provisions of his contract. He also alleges that at the end of twelve months the stock was worthless and that Crump was insolvent, and that at the time of the purchase the stock was worthless and Crump was insolvent, although the latter fact was unknown to him. He then alleges that the plaintiff bank at the time it took the notes had actual knowledge of the written agreements between him and Crump, and therefore averred that plaintiff was not an innocent purchaser in good faith, of either of the notes for a valuable consideration.

The plaintiff by reply put in issue most of the allegations of the answer, and in a separate paragraph affirmatively alleged that the two original notes, the renewals of which were sued upon, were endorsed and transferred by Crump, and delivered to J. D. Grover, and that thereafter and before maturity of either of them Grover for a valuable consideration and in the due course of business transferred said notes by endorsement and delivery to the plaintiff. In the reply an estoppel against the defendant was relied upon by alleging in substance that the renewal notes were executed and delivered to the bank without any claim whatsoever by defendant of any defense to the originals, or any mention of the writings relied on as a defense thereto, and that plaintiff accepted the same under such conditions. By rejoinder the defendant denies the affirmative allegations in the reply, and affirmatively alleges that the renewal notes were executed by procurement of J. D. Grover, the president of the plaintiff bank, and at its instance, with the understanding and agreement that the rights of the parties under the renewals were to remain the same as they were under the original notes, all of which was done with the full knowledge of the facts by the plaintiff and its officers acting for it. It is likewise denied in the rejoinder that Grover in the due course of business or without notice, transferred the notes or either of them to the plaintiff bank, or that the plaintiff became the owner thereof as an innocent purchaser for value at any time, or in any way.

In an amended answer and cross-petition, which is made a cross-petition against J. D. Grover, it is alleged that the renewal notes so executed by defendant were renewed by the procurement of Grover who was the president of the plaintiff bank, and made at its instance, with the understanding and agreement that the rights of the parties under the renewals were to be the same as under the original notes. Then in addition to a restatement of the facts regarding the execution of the original notes and the collateral agreement then executed by Crump, it is alleged that the said written agreement so signed by Crump was made by Crump for himself and said Grover, and that Grover to induce defendant to execute the note of April, 1920, and to induce him to accept the writing then given to defendant by Crump, represented to defendant that Crump was solvent and entirely responsible financially and able to carry out his contract,

and defendant believing said statement of Grover to be true, and in reliance thereon, did execute the note and accept the said written contract. It is then alleged that Grover was the president of the plaintiff bank, and well knew all the facts alleged, and so knowing took the said notes to the bank and endorsed them to that institution and obtained the money on them for himself and said Crump. He alleges that the statement and representation of Grover to him as to the financial responsibility of Crump was false and fraudulent, and known to Grover to be false when he made it, and that same was made to induce him to execute said note, and did induce him to execute the same and accept said contract. He alleges that the stock at the time was without value and worthless, and that Crump was then insolvent, and that Grover is the man who received the consideration for said notes, and that the execution of the notes as above set forth was part of a scheme entered into between Grover and Crump whereby they would get money from plaintiff bank upon the endorsement of said notes to it by Grover, who was then its president, and he therefore says that Grover is primarily liable to the bank, and prays that he be so adjudged and required to pay the sum to the bank, and hold defendant Davidson harmless. He alleges that the two original notes were obtained from him by fraud which was at the time known to Grover, and was so known to him when he obtained the money from the bank as set forth, and was a part of a fraudulent scheme.

In answer to this cross-petition Grover denies on information most of the material allegations in it; but alleges affirmatively that he did endorse both of the notes to the plaintiff bank and obtained the money on them from it for himself, but that at the time he did so he was the holder and the owner of the same in due course and for value, and denies that he knew of any fact or facts as set out in the cross-petition, or any fact whatever, affecting in any way the validity of the notes or either of them, at the time he made such transfer. He also alleges affirmatively that at the time the original notes were each executed defendant was fully cognizant of all the facts in connection with the value of the stock and of the financial condition of Crump.

Then in a separate paragraph he alleges that at the time of the renewal of the two notes by the defendant Davidson he paid to the bank the accrued interest thereon,

and executed and delivered to the bank the renewal notes sued on without making any claim of any kind either to the bank or to Grover, that he had any defense to the original notes, or without making any mention either to the bank or to Grover of any writing between him and Crump, and without making any mention of any fraud or condition in connection with the execution of said notes or either of them, and he says that both of the renewals were executed after Davidson well knew the actual value of the stock, and well knew the financial condition of Crump, and he pleads said facts as a waiver by Davidson of the defense attempted to be set up against the original notes, and pleads such waiver as an estoppel against the cause of action attempted to be set up against Grover.

The affirmative allegations in Grover's answer to the cross-petition were traversed, and the bank then filed an amended reply wherein it charged that the original notes were given by Davidson to Crump for the stock with the understanding that they were to be discounted for the purpose of raising development funds for the company, and that if the agreement relied upon by Davidson was susceptible of the interpretation put on same by him, it was a fraud upon the part of Davidson and Crump upon the rights of the company and Grover. After a motion by the company to grant it a separate trial from the action on the cross-petition against Grover was overruled, the parties went to trial upon the issues thus made, and at the conclusion of the evidence offered by defendant Davidson the court directed a verdict for the bank and Grover, and from that action of the court this appeal is prosecuted.

The record does not disclose the ground upon which the court directed the verdict for the bank and Grover, but we learn from appellee's brief that it was because of the trial court's opinion that the writing relied upon even if it had been exhibited to Grover and the bank at the time they negotiated the original notes, would not have constituted a defense to an action on them in their hands because the writing does not in any manner refer to the notes, or attempt to put upon them any condition whatsoever.

For the purposes of this opinion it is unnecessary to inquire into the soundness of this ruling, for in the case of Crutchfield v. Robinson, 208 Ky. 354, this court

in a case involving a collateral writing given by Crump, at about the same time and in practically the same language to another individual, has directly passed upon that question, and held that such writing, if the notice therein required has been given in time, constitutes a valid defense to the note in the hands of the original payee.

The evidence in this case, apart from the writing itself, tends to show that Grover and Crump were co-operating with each other in the sale of this stock, and that Grover himself had taken $5,000.00 worth of the stock, and at a meeting held at Stamping Ground some two or three days before the execution of the last Davidson note Grover was present and made a statement to those there congregated, including appellant, to the effect that he had visited the oil territory owned by Crump's company, and regarded it as an excellent oil field; that he himself had taken some stock in the company, and then announced his purpose to take $1,000.00 more of stock. It also tends to show that he knew at that time of the collateral contracts which were being executed by Crump upon the sale of stock, and publicly announced that he desired no such contract. Also that he said at that meeting Crump was responsible for any contract he made, and then said to Crump if he would come to his office in the morning he would give him a check for the additional $1,000.00 without a contract, which, however, he never did. The evidence also shows that Grover was instrumental in arranging over the telephone for the meeting at Stamping Ground, and that Crump, when he was in Georgetown, made Grover's office his headquarters.

Obviously under the ruling in the Crutchfield case the notes and collateral contract must be treated as one transaction, and obviously the collateral contract, after notice given as required by its terms, would have constituted a defense to the action if it had been brought by Crump, the original holder. That being true, when Davidson showed by that evidence the infirmity in the original note, and there being an issue whether the bank was an innocent holder in due course without notice, under the provisions of our Negotiable Instruments Act, and according to the holding of two opinions of this court construing that act, it then became incumbent upon the bank to show by evidence that it was in fact an innocent holder for value in due course.

It is provided in subsection 59 of section 3720b, a part of the Negotiable Instruments Act, that:

"Every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims, acquired the title as a holder in due course."

In the case of Lynchburg Shoe Co. v. Hensley, 186 Ky. 769, this court, in construing that provision of the statute, said:

"The meaning of this is that when the defendant sets up in his answer a defect in the title of the plaintiff who, on the facts appearing in the petition, is a holder in due course of a negotiable instrument, it is incumbent upon him to introduce evidence in support of his defense, although it is not necessary that he should go so far as to establish that the holder took it with notice of the infirmity or defect in its execution. He may rest when he has introduced sufficient evidence to show the infirmity or defect in the execution of the paper, such as fraud or failure of consideration. When he has done this, the burden shifts to the plaintiff to show that he did not have actual knowledge of the infirmity or defect, or knowledge of such facts, that his action in taking the instrument amounted to bad faith."

That interpretation of the statute has been since followed and reiterated in the case of Owsley County Deposit Bank v. Burns, 196 Ky. 359.

When, therefore, the defendant Davidson had shown the defect or infirmity in the original notes, and when he had shown that the renewal notes had been executed with the understanding they should not affect any defense he might have to the originals, and that he had given the required notice, then clearly the court erred in giving a peremptory instruction, and in not requiring the bank to assume the burden and introduce evidence to show that it was in truth an innocent holder in due course.

As to the cross-action against Grover it is clearly an action for damages for fraud and deceit; it alleges

in substance that the notes were obtained from him by the fraud of Crump, as set forth in his said amendment and that when the notes were executed and the contracts made Crump was insolvent and the stock was worthless, all of which was known both to Crump and Grover at the time, but unknown to Davidson; and that Grover participated in the fraud which Crump had perpetrated upon him, and in order to induce Davidson to execute said note Grover falsely represented to him that Crump was financially able to carry out said contract, when he knew Crump to be insolvent, and thereby induced Davidson to execute said note and accept said contract; and that thereafter Grover well knowing the fraud which had been practiced upon Davidson, and well knowing that the note was a conditioned one as set forth, negotiated the instruments to the plaintiff bank and received the money therefrom.

Obviously the evidence which we have recited above tends to substantiate these charges against Grover, and is sufficient to authorize the submission of the case as against him to the jury as to the last note.

Of course if there is finally no recovery against Davidson by the bank there can be no recovery by Davidson against Grover; but if the bank should upon another trial show to the satisfaction of a jury that it was in fact an innocent holder in due course and therefore entitled to recover on the notes, then under those conditions the issues as between Davidson and Grover should be submitted.

The evidence tended to show that at the Stamping Ground meeting when Davidson was present, and only a day or two before he executed the last note to Crump, the latter in the presence of Grover was executing and delivering to other persons present, who were subscribing for stock, contracts identical with the one theretofore and thereafter delivered to Davidson. There are other circumstances unnecessary to go into tending to show cooperation between Crump and Grover to such an extent as to authorize a jury to have inferred that they were in a fraudulent scheme.

Where one has actual knowledge that a material representation made by him is false, or where such representation is made without any reason to believe in good faith that it is true, or where such representation, if material, is in reckless disregard of the truth, a party who in reliance upon the same has taken such action as

results in damage to him, he has a cause of action against the person so making the representation, even though the representor at the time had no direct interest in bringing about such action upon the part of the complainant. Trimble v. Reid, 97 Ky. 713.

Cook on Stock & Stockholders, section 355, states the rule thus:

"In order to sustain an action for damages for deceit whereby plaintiff was induced to buy or sell shares of stock, it is necessary for plaintiff to prove that statements were made, or acts done, which were fraudulent; that the person guilty of them knew they were fraudulent, and that the plaintiff acted on such statements in buying or selling said stock."

The allegations of the cross-petition come up to the requirements thus laid down, and the evidence introduced by Davidson tended to establish them; and for that reason the directed verdict for Grover was also erroneous.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.

## Response to Petition for Rehearing.

### Per Curiam

The petition is based primarily upon the erroneous idea that this case is identical with that of Crutchfield v. Robinson, 208 Ky. 354. It is, as recited in the opinion, a companion case to that "with some variations," and those variations distinguish the two in many respects.

As to the effect of the collateral obligation by the maker the two cases are identical, and the opinion in this case recognizes the controlling effect of the opinion in the Crutchfield case; but in that case there was an additional defense asserted growing out of the fact that the assignee of the note, who was undertaking to enforce its collection against the maker, had made false representations as to the payee's financial condition which induced the maker to execute the note and accept the collateral obligation of the payee, while as between the bank and Davidson in this case there is no such additional defense. On the contrary, here the original assignee was Grover, who became so far as this record discloses, the individual owner by

assignment, and thereafter himself assigned the note to the bank.

Counsel appears to confuse the two defenses discussed in the Crutchfield case, and to have the view that there was in fact only one defense, and that the court held that knowledge of the collateral agreement by Crutchfield was not a defense to the note in his hands unless he had also been guilty of the fraudulent misrepresentation charged against him as to Crump's solvency A careful reading of the opinion will disclose the inaccuracy of this view, to say nothing of the clear and concise *sullibi* printed with the Crutchfield opinion, made by a trained expert digester who clearly had no such conception.

But, it is said that the Crutchfield opinion holds that even if Crutchfield knew of the collateral agreement when the note was assigned to him that his representations were merely the answering for the debt or default of another, and not being in writing were in contravention of the statute of frauds, but, that if Crutchfield knew of the contract, and in addition fraudulently represented to Robinson that Crump was solvent, whereby Robinson was induced to execute the note, and if Crump was in fact at the time insolvent, all these facts taken together constituted a defense. But all that has nothing to do with this case, for the effort here as between Davidson and Grover is to hold the latter primarily responsible to the bank as between him and Davidson, on Grover's written endorsement of the note to the bank, and to base that primary liability upon his alleged fraud practiced upon Davidson in procuring the execution of the note to Crump. In this case, therefore, the statute of frauds does not and can not apply.

In the Crutchfield case, as in this, an estoppel was relied upon by the holder because of the renewal. In the Crutchfield case there was a plea in avoidance of the estoppel to the effect that the plaintiff therein had represented to defendant at the time of the renewal that the payee, Crump, was making arrangements to pay the amount mentioned in the contract, and would be ready to do so in a few days; and the opinion in that case, after intimating that this was not a good plea in avoidance, stated the evidence given on that issue and held it insufficient to avoid the estoppel. In this case, however, there is a definite plea by defendant that at the time of the renewal it was agreed and understood between him and

the officials of the bank that the renewal should in no wise affect any existing defenses he may have had to the original notes, and Davidson in his evidence clearly and distinctly upheld this plea in avoidance.

If, as shown by the testimony of Davidson, at the time of renewal it was understood and agreed that such renewal should not affect his rights, clearly there was no waiver of the fraud which had theretofore, as claimed by Davidson, been practiced upon him by Grover and Crump.

The question as to what extent the knowledge of Grover is to be imputed to the bank under the situation involved here is not presented on this appeal; but upon another trial if it should appear that Grover was acting solely for himself when he became the owner of the Davidson note which he thereafter discounted to the bank, then the knowledge which Grover had as an individual will not be imputed to the bank when he and the latter were dealing with each other at arm's length.

There is nothing in the opinion in this case inconsistent with the opinion in the Crutchfield case.

The petition for rehearing is overruled.