## Illinois Central Railroad Company v. Fontaine.

(Decided December 17, 1926.)

Appeal from Jefferson Circuit Court
(Common Pleas, First Division.)

1.  Carriers—Interstate Commerce Act, Carrier's Rules, and Commission's Orders as to Rates and Valuations are Binding on Interstate Carriers and Shippers of Baggage (U. S. Comp. Stats., Section 8563 et seq.).—Regulations of Interstate Commerce Act (U. S. Comp. Stats., section 8653 et seq., carrier's rules filed with Interstate Commerce Commission, and latter's orders on subject of

rates, as well as valuations of interstate shipments, are binding on carriers and shippers of baggage, as well as ordinary freight.

2. Carriers—Shipper of Baggage by Carrier Filing Rule Limiting Quantity or Excluding Specific Articles can Recover Only Amount Stipulated and Not for Concealed Forbidden Articles.—Where carrier files and publishes rule with Interstate Commerce Commission that it will not accept baggage in excess of 100 pounds for free transportation, or will not accept certain articles as baggage, shipper or passenger can recover no more than amount stipulated, and not at all for forbidden articles, shipment of which was concealed from carrier.

3. Carriers—Regulation that Jewelry, "Should Not be Inclosed in Personal Baggage or Checked" Held Not to Exclude Jewelry as Baggage.—Regulatory provision, filed by carrier with Interstate Commerce Commission, that "money, jewelry, . . . and like valuables . . . should not be inclosed in personal baggage or checked," held not to exclude jewelry as baggage, so as to preclude recovery from carrier for its servant's theft thereof, being only advisory or admonitory.

4. Carriers—Carrier Should Limit Common-Law Liability, Pursuant to Interstate Commerce Act, by no Doubtful Language (U. S. Comp. Stats., Section 8563 et seq.).—Carrier attempting, under Interstate Commerce Act (U. S. Comp. Stats., section 8563 et seq.), to limit its common-law liability, should do so by no doubtful language.

5. Carriers—Jewelry, suitable to Passenger's Circumstances and Intended for Personal Use During Journey, is "Baggage," but Not where Carried for Business, Sale, or Another's Use.—At common law, jewelry suitable to passenger's condition and circumstances in life and intended for personal use during journey is properly included as "baggage," but not where carried by traveler for use of another or for purpose of business or sale.

6. Carriers—Carrier is Insurer Against all Contingencies Except Act of God, Public Enemy, and Inherent Nature of Article Shipped, to Extent that Contract is Not Limited.—Carrier is not responsible for valuation of jewelry lost by its negligence or by theft in excess of limitation fixed in rule filed by it with Interstate Commerce Commission, but, to extent that contract is not limited, is insurer against all contingencies except act of God, public enemy, and inherent nature of article shipped.

7. Trover and Conversion—"Conversion" Exercise of Dominion Over Property.—Act of "conversion" must be done with reference to property, over which tort-feasor, by himself or another, exercises dominion, by virtue of which he attempts either to appropriate it to his own use or to deprive true owner of title.

8. Trover and Conversion—Dominion Over Property Converted Implies Knowledge.—Dominion necessary to conversion of property implies knowledge thereof by wrongdoer or one acting for him in prosecution of his business.

9. Principal and Agent—Generally, Agent's Knowledge is Principal's, Unless he Presumably Would Not Communicate Fact.—Generally, agent's knowledge is knowledge of principal, except where agent's conduct raises clear presumption that he would not communicate facts to principal, as where such communication would necessarily prevent consummation of agent's fraudulent scheme or one claiming benefit of agent's knowledge colludes with him to cheat or defraud principal.

10. Carriers—Carrier Without Knowledge of Nature of Baggage, which Passenger Valued at Not Over $100.00, Held Not Liable for Conversion of Jewelry Stolen by Servant.—Where carrier and passenger contracted that baggage was of value not exceeding $100.00, and nature thereof was unknown to carrier or any agent thereof until its servant opened trunk and stole jewelry therein, carrier was not liable in trover as for conversion; presumption being that such servant would not communicate his knowledge of contents to carrier.

11. Master and Servant—Principal and Agent—Master or Principal is Liable for Agent's or Servant's Acts Contracted Against, Though Aside from Principal's Business.—Master or principal is not relieved from liability for acts of agent or servant, stepping aside from principal's business, where recovery is based on contract against thing or particular act done.

12. Carriers—Action for Conversion of Jewelry Being in Tort and Not Against Carrier as to Loss Exceeding Agreed Valuation, Carrier was Not Liable.—Action against carrier for conversion of jewelry, stolen from plaintiff's baggage by defendant's servant, being in tort, and not against carrier as to amount of loss exceeding agreed valuation, carrier was not liable, as where recovery is based on contract against thing or particular act done by servant stepping aside from master's business.

TRABUE, DOOLAN, HELM & HELM for appellant.

FURLONG & WOODBURY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The appellee and plaintiff below, Mrs. E. L. Fontaine, in the summer of 1917 resided in the city of New Orleans, Louisiana. She purchased from the appellant and defendant below, Illinois Central Railroad Company, a round trip ticket to Louisville, Kentucky, and left Louisville on her return trip on June 19, 1917. On the afternoon of June 18, the day before she started on her return trip, she delivered her trunk in the baggage room of defendant at Louisville, but it went upon the same train the next day upon which she returned and arrived

promptly in New Orleans. Plaintiff in packing her trunk put therein a small box containing five pieces of valuable jewelry, consisting of a brooch worth $500.00, a diamond ring worth $550.00, another smaller diamond ring worth $150.00, and a gold necklace worth $15.00. When she opened her trunk after it had been delivered to her residence she found the box in the tray where she had put it but the jewelry had been taken from it. Investigation developed that an employe (but the record does not show that he was a baggage agent), between the time that the trunk was delivered at the depot in Louisville and the time of plaintiff's departure, had opened the trunk in some manner and took the jewelry from the box and appropriated it to his own use. The brooch was afterwards recovered and delivered to plaintiff but none of the other pieces of the jewelry was ever recovered, and plaintiff brought this action against the defendant in the Jefferson circuit court to recover the aggregate value of the three lost pieces amounting to $715.00, and other items of expense in prosecuting the thief and recovering the brooch.

The court by its instructions eliminated the items of expense sought to be recovered and only submitted to the jury plaintiff's right to recover the value of the lost jewelry if it believed from the evidence that it was taken from the trunk by Steve Meeks, the guilty servant, and there was a verdict in favor of plaintiff for $715.00, which the court declined to set aside on a motion for a new trial, and from the judgment pronounced thereon defendant prosecutes this appeal; insisting under the facts developed by the record that it was entitled to a peremptory instruction in its favor and for which it moved, but which the court overruled; or if not, that in no event was plaintiff entitled to recover exceeding $100.00, representing the value of plaintiff's baggage as fixed in and upon her ticket, and also the baggage check and in schedules or rules which the defendant had theretofore filed with the Interstate Commerce Commission pursuant to the provisions of the Interstate Commerce Act and its various amendments, and to those questions we will briefly address ourselves.

It is conceded by learned counsel for plaintiff that the transportation of baggage in an interstate trip comes within the purview and scope of the Interstate Commerce Act as now amended or as amended at the time of the shipment involved, and that its provisions as well as the

rules of the carrier with reference to the matter, issued by it and filed with the Interstate Commerce Commission, together with any order made by the latter, are each and all binding upon both shipper and carrier, and which was so held by the Supreme Court of the United States in the cases of Boston & Maine Railroad Co. v. Hooker, 233 U. S. 97; New York Central Railway Co. v. Beaham, 242 U. S. 148, and Missouri Pacific Railroad Co. v. Boone, 270 U. S. 466, decided by the Supreme Court on March 22, 1926. Almost multitudinous are the cases from federal courts as well as state ones holding that such regulations, rules and orders covering the subject of rates, as well as valuations of ordinary freight shipments, are likewise binding upon the carrier and the shipper, some of which are Adams Express Co. v. Croninger, 226 U. S. 491; Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639; Missouri, Kansas and Texas Ry. Co. v. Harriman, idem. 657; Northern Pacific Ry. Co. v. Wall, 241 U. S. 87; Georgia, Florida and Alabama Ry. Co. v. Blish Milling Co., idem. 190, and we would experience no difficulty in concluding that by a parity of reasoning such would be true as to baggage shipments even if the cases, *supra,* did not expressly so determine. Some of our relevant cases are L. H. & St. L. Ry. Co. v. Johns & Patterson, 201 Ky. 752; Gardner v. L. & N. R. R. Co., 212 Ky. 540, and L. & N. R. R. Co. v. Brashear, 217 Ky. 439.

The Supreme Court cases, *supra,* expressly dealing with baggage, hold, in construing the entire Interstate Commerce Act as amended; that it is competent for the carrier to make rules and file them in the proper manner with the Interstate Commerce Commission limiting and prescribing, not only the weight of the package that it will transport free of charge, but also its valuation, unless the passenger reveals the facts and pays for the excess weight and the increased rate because of the quality of the baggage as prescribed by it in its published and filed rules. Furthermore, it was expressly held in the Hooker case that it was competent to limit the carrier's common-law liability by the filing of such rules and both shipper and carrier must take notice from and after the date of their filing and that to perform the services contrary to the terms prescribed in the rules was absolutely prohibited by both carrier and shipper or passenger as being an invasion of the equality purpose of the entire

Interstate Commerce Act, since such invasions would constitute a discrimination either in favor of the shipper or passenger, or the carrier, and which is forbidden by the Interstate Commerce Act even to the extent of making it a high misdemeanor to do so on the part of both carrier and shipper. See 10 C. J. 597, para. 1016; page 601, para. 1026; page 603, para. 1028, and the cases and federal statutes cited in the notes.

It was furthermore held in the Hooker, Beaham and Boone cases, *supra*, and which is also stated in the text in 10 C. J. 1213, in substance, that the effect of permitting the carrier to file regulations as to passenger's baggage, limiting its liability except on payment of specified rates, does not change the common-law liability of the carrier as a shipper of freight *when done according to the prescribed rules and regulations* made under the provisions of the Interstate Commerce Act; but that its responsibility *does not* attach to that part of the shipment made and done outside or in excess of such provisions, rules and regulations. To illustrate, if the carrier, as was done in this case, files and publishes a rule with the Interstate Commerce Commission that it will not accept baggage for free transportation in excess of 100 pounds, or that it will not accept as baggage under any circumstances certain specified articles, the shipper or passenger can recover on his contract of shipment no more than the amount stipulated and not at all for the forbidden articles when their shipment is concealed from the carrier.

As we said above, the law as so briefly stated is conceded by learned counsel for plaintiff and was likewise so held by the learned trial judge. But counsel insist and the court so held that, notwithstanding the law as so stated, defendant was liable in this case for the full value of the missing jewelry upon the ground that it was stolen by the servant of defendant who performed some kind of labor in its baggage room, and as the court so held (and which must necessarily be true as a premise before liability can attach) was a theft by the defendant, and a conversion by it, and that presents the exclusive and narrow question for our decision.

One of the regulatory provisions filed by defendant with the Interstate Commerce Commission said: "Money, jewelry, silverware, negotiable paper and like valuables, liquids, explosives, loaded firearms, fragile or perishable

articles, should not be enclosed in personal baggage or checked." Counsel for defendant insist that their client by that provision prescribed that it would not accept any of the articles therein contained as baggage and, since it eliminated jewelry, there should have been a peremptory instruction exonerating defendant from all liability. The trouble with that contention, as we conclude, is, that the quoted language does not have the effect to, nor is it susceptible to, the interpretation of excluding jewelry as baggage. At most, it is only advisory or admonitory that jewelry should not be shipped as baggage. At any rate, it is clearly susceptible to the latter interpretation and, since it is the language of the carrier, we conclude it should be so construed; for when it attempts under the provisions of law to limit its common-law liability it should do so by no doubtful language.

Subdivision (2) in rule 8 filed by the defendant with the Interstate Commerce Commission says: "Subject to the limitations as shown in Rules 9, 10 and 12 (not here relevant), one hundred and fifty (150) pounds of baggage, not exceeding one hundred dollars ($100.00) in value will be checked without charge for each adult passenger and seventy-five (75) pounds for each child traveling on a half ticket;" and on the ticket upon which plaintiff was traveling there was printed these words: "Baggage valuation is limited to one hundred dollars for an adult and fifty dollars for a child, unless purchaser hereof declares a greater valuation at time baggage is presented for transportation and pays excess valuation charges according to tariff rates, rules and regulations." Other portions of the rules of defendant provided for graduated payments for excess weights in baggage.

At common law jewelry "suitable to the condition and circumstances in life of the passenger and intended for personal use during the continuance of the journey, are properly included as baggage; but not where they are being carried by a traveler for the use of someone else or for the purpose of business or sale." American Contract Company v. Cross, 8 Bush 472, 10 C. J. 1190, and a great many cases, both federal and state, are cited in note 10 to the text. Defendant may not, therefore, be exonerated in this case upon the sole ground that plaintiff's jewelry was not a proper item of baggage; but having limited its liability to the $100.00 as a maximum valuation in the rule it filed with the Interstate Commerce

Commission, if the jewelry had been lost by negligence of the carrier or by theft (though by a servant) defendant would not be responsible under its common-law liability for a valuation exceeding the limitation fixed in the rule and which the cases, *supra,* establish without dissent. To the extent, however, that the contract is not limited the carrier is an insurer against all contingencies except the act of God, the public enemy, and the inherent nature of the article shipped; which brings us directly to the specific and narrow question *supra, i. e.,* whether the fact that the theft of the jewelry by the servant of defendant, notwithstanding the law as last above stated, renders it liable for the full value of the jewelry.

Before referring to or discussing any of the cited cases bearing directly upon the point, we will first address ourselves to the grounds of the trial court's conclusions and incidentally to like conclusions found in the opinion in the case of Chesapeake & Ohio Ry. Co. v. Hall, 136 Ky 379, *i. e.,* that defendant is liable because it converted the baggage in excess of the limitations hereinbefore pointed out and for that reason is liable therefor. Our examination of the law convinces us that it is much easier to make that statement than it is to prove it by an analysis of the law and the application of legal principles as is done in the demonstration of a mathematical problem by the application of the unerring rules of that science.

The definition of tortious conversion for which the common-law action of trover could be maintained is thus defined by the text in 26 R. C. L. 1098: "Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it in exclusion of, in defiance of, or inconsistent with the owner's right." In the same book on page 1110 the principle is stated that: "In order that

the act may constitute a conversion of personal property it must amount to a tortious detention of the same from the owner, or its destruction, or the exclusion or defiance of the owner's rights, or a withholding of the possession under a claim of title inconsistent with that of the owner. It is not, however, necessary to show a complete manucaption of the property on the part of the defendant, nor need actual, forcible dispossession be shown. Any unlawful interference or exercise of dominion with respect to the property by which the owner is damnified is sufficient."

Mr. Greenleaf, in volume 2, section 642, in his standard work on Evidence, thus defines tortious conversion: "A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title inconsistent with his own." And which definition is adopted by Mr. Freeman in his note to the case of Bolling v. Kirby, 90 Ala. 215, and reported in 24 A. S. R. 789, the annotation commencing on page 795. From those definitions it is clearly apparent that, regardless of other elements, the converting act by the tort-feasor must be done with reference to property over which he at the time, either by himself or another, exercises dominion, and by virtue thereof he attempts either to appropriate the property to his own use or to deprive the true owner of title. Necessarily the possession or dominion within the above definition implies knowledge thereof on the part of the wrongdoer, and with such knowledge on his part, or of one at the time acting for and on his behalf *and in the prosecution of his business,* misappropriates the property in such a manner and for some of the purposes as are necessary to constitute conversion. As a corollary therefrom there could be no conversion without such knowledge and which, in turn, is presumed only when there is the proper dominion. While the question is not argued out in briefs, we anticipate that learned counsel for plaintiff as well as the trial court would concede what we have stated to be true. But by way of avoidance it is argued, as was stated in the Hall opinion, *supra,* that when defendant's agent by his felonious act obtained knowledge of the contents of plaintiff's trunk at the time when he broke it

open with the intent to steal therefrom defendant became
so notified and the servant's knowledge is imputable to
defendant and *eo instanter* became its knowledge, *i. e.,*
that it at that time became aware of plaintiff's fraudu-
lently imposed possession of her diamonds upon it and
its servant through whom it received such knowledge
after that time feloniously appropriated the property,
not to defendant's benefit or in the exercise of any duty
*in furtherance of its business,* but for his own venal pur-
pose converted the property to his own use, it was a
conversion by defendant. It will be observed that a link
in the chain of requirements for the fastening of liability
on defendant for converting the property is its imputed
knowledge of its dominion over it (the plaintiff having
contracted against it), and if that link is faulty the entire
avoidance falls to the ground.

The general rule is that knowledge of an agent is
knowledge of his principal, and it may be conceded as
true for the purposes of this case that the same principle
applies as between master and servant. The theory
upon which it was established and is bottomed is upon
the presumption that the agent will do his duty toward
his principal and impart to the latter any knowledge
which the agent obtains affecting his principal's busi-
ness, and, necessarily, when there is no foundation for
such a presumption the reason for the rule ceases and it
will not be applied. Hence, courts have created and
clearly established an exception to the general rule, chief
among which is thus stated in 21 R. C. L. 843, para. 24:
"While the knowledge of an agent is ordinarily to be im-
puted to the principal, it would appear now to be *well
established* that there is an exception to the construction
or imputation of notice from the agent to the principal
in case of such conduct by the agent as raises a clear pre-
sumption that he would not communicate the fact in con-
troversy, as where the communication of such a fact
would necessarily prevent the *consummation of a fraudu-
lent scheme which the agent was engaged in perpetrating,*
or when the person claiming the benefit of the knowledge
or notice or those whom he represents collude with the
agent to cheat or defraud the principal. If, for example,
a clerk defrauds his employer by forging the latter's
indorsement and collecting his checks, *for the clerk's own
use,* the clerk's knowledge of the fraud, acquired in its

perpetration, is not imputable to the employer." (Our italics.)

All text writers and courts recognize and apply that exception, and we have done so in a great number of cases, some of the latest of which are: Taulbee v. Hargis, 173 Ky. 433; Ohio Valley Banking and Trust Co. v. Citizens' National Bank, idem. 640; Niles v. Meade, 189 Ky. 243, and Owsley County Deposit Bank v. Burns, 196 Ky. 359. We thus see that the presumption upon which the general rule is founded is destroyed and has no basis when the transaction relates to personal matters of the agent or servant and where his interests are adverse to those of his principal, and that the presumption is likewise destroyed when from the facts there arises a counter one that the agent would not communicate the fact to his principal when such communication "would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating." R. C. L. supra. Some of the foreign cases supporting the exception as contained in note 14 to the text of 21 R. C. L., supra, are: Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 60 Am. Rep. 736; Wickersham v. Chicago Zinc Co., 18 Kan. 481, 26 Am. Rep. 784; Allen v. South Boston R. Co., 150 Mass. 200, 22 N. E. 917, 15 A. S. R. 185, and note, 5 L. R. A. 716, Reisan v. Mott, 42 Minn. 49, 43 N. W. 691, 18 A. S. R. 489; Brookhouse v. Union Pub. Co., 73 N. H. 368, 62 Atl. 219, 111 A. S. R. 623, 6 Ann. Cas. 675, 2 L. R. A. (N. S.) 993 and note; Critten v. Chemical Nat. Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529; Gunster v. Scranton Illuminating Heat, etc., Co. 181 Pa. St. 327, 37 Atl. 550, 59 A. S. R. 650.

If the facts of this case do not bring it within the exception it would be a difficult matter to imagine any that would do so. Here, the carrier as well as the passenger had contracted that the baggage was of a valuation not exceeding $100.00, and the nature of it was wholly unknown to the carrier, and no agent of it learned or became possessed of knowledge to the contrary until the pilfering servant went into the trunk for the purpose of accomplishing a theft for his exclusive benefit. Surely, under such circumstances there would be a counter presumption indulged that the servant would not communicate the fact to his master, for to do so would prevent him from consummating his contemplated theft, and that being true the necessary element of domin-

ion over the converted property in order to render the act tortious on the part of the master so as to render him liable in trover to the owner as for a conversion of the property is lacking.

Independently, however, of the foregoing considerations we have recently had before us in the case of Brooks v. Gray-Von Allman Sanitary Milk Co., 211 Ky. 462, the question as to when the master or principal could be held liable for the felonious acts of his servant or agent, and in which we held that if the felonious act was not done in the apparent scope of the authority of the agent or servant *in the prosecution of his master's or principal's* business, the latter would not be liable. Without stating the facts or the reasoning of that opinion it is sufficient to say that after a somewhat lengthy discussion of the question the conclusion was reached that the master or principal would be liable for the acts of his servant, although wilful or malicious, ''when done in the course of his employment *with a view to the furtherance of his employer's business,* and not for a purpose personal to himself.'' (Our italics). Furthermore, we therein adopted as an exception to the rule a part of the text in 2 C. J. 853, saying: ''But if the agent steps aside from the principal's business, for however short a time, to do acts not connected with such business the relation of agency is for that time suspended, and the agent is not acting within the course of his employment,'' and which exception had theretofore been recognized by us in the cases of Taylor v. Stevens' Admr., 163 Ky. 770, and Smith & Sons v. Dawson, 206 Ky. 107. We also in the Brooks opinion pointed out what would constitute a ''stepping aside'' by the agent and servant so as to relieve the master or principal from liability for his acts when so engaged. But, of course, such relief from liability could not be upheld where recovery against the principal or master is based upon a contract against the thing or the particular act that the agent or servant did, although committed when he had so stepped aside. As for instance, the liability of a bank to a depositor because of defalcation by its officers; or a common carrier on its common-law liability as an insurer under the contract of carriage. In the one the bank contracts to honor the depositor's draft or check when duly presented, and in the other the carrier contracts to safely deliver the goods, except when lost through the act of God, the public enemy or the inherent

nature of the shipment. However, the instant action is in tort and, although against a carrier, it never became such, as we have seen, as to the excess of the plaintiff's baggage over and above the $100.00 agreed valuation, and the principles of the illustrated cases can have no application. We, therefore, conclude that the reasoning of the learned trial judge and that of our own in the Hall case, *supra,* can not be sustained and for that reason should not be followed.

Moreover, we held in the two cases of Illinois Central R. R. Co. v. Matthews, 114 Ky. 974, and Landesman Kirshheimer v. L. & N. R. R. Co., 178 Ky. 712, that recovery could not be had against the carrier even under its common-law liability for articles not properly classified as baggage without knowledge on the part of the carrier that they were so contained in the package, and that being true, and the carrier possessing no knowledge, as we have endeavored to demonstrate in this case, of the excess valuation of the baggage sought to be recovered herein, it could not be held liable on its contract of carriage but only for conversion, which we have found it did not commit. See also to the same effect as the cited domestic opinions, the case of Humphreys v. Perry, 148 U. S. 627.

Plaintiff relies on the Hall case, *supra,* and the cases of Adams Express Co. v. Berry, 31 L. R. A. (N. S.) 309, an opinion by the Supreme Court of the district of Columbia, and Fessler v. Detroit, etc., Co., 204 Mich. 694. But those cases rested upon the erroneous theory, as we have endeavored to show, that the conversion of the shipment was one committed *by the carrier* when the goods were feloniously appropriated by its servant. On the contrary, the direct question was presented to the court in the cases of Moore v. Duncan, 237 Fed. 780; D'Utassy v. Barrett, 219 N. Y. 420, and Henderson v. Wells Fargo Express Co., 217 S. W. (Texas) 962, in each of which interstate shipments were involved and with contractual limitations the same as we have here and those courts arrived at the same conclusions hereinbefore expressed. The Moore opinion was one by the circuit court of appeals rendered by Judge Knappen, and in it he referred to and discussed the Berry case and expressed disagreement with it, giving as a reason therefor that: "It overlooks the fact that it was entirely competent at common law, and no less so under the existing federal statutes, to limit

liability for loss not within the carrier's control. Concededly, it would not be violative of public policy to contract for limited liability in case of theft by a stranger. We can see no valid ground for holding such contract invalid in case of theft by an employe for his own sole purposes and against the interests and without the connivance of the carrier. Theft of *goods in transportation* and in the possession of the carrier for such purpose, *is a theft from the carrier itself.* Theft, under the circumstances stated, whether by a stranger or by an employe of the carrier, involves no misfeasance or lack of faithfulness on the part of the carrier." (Our italics.)

The court in the Wells case wrote a most elucidating and convincing opinion. It involved a question of theft on the part of a servant the same as here. The court refers to the cases, *supra,* relied on by plaintiff's counsel, and in the course of the opinion said: "From a careful examination of the authorities, both state and federal, upon this question, we conclude that much of the disagreement in the holdings has been occasioned by the failure of those courts adhering to the rule that a carrier cannot be protected in its limited liability claim where the facts show that the shipment was converted through the dishonesty, and to their own use and benefit of the agents or employes of the carrier, to distinguish between a conversion by the carrier itself and a conversion by the employes of the carrier without the knowledge and consent of the carrier." And in making specific reference to the Berry case the court said: "However, the district of Columbia court of appeals, in the course of its opinion, used argument and cited authorities supporting its conclusion upon the apparent theory that the conversion alleged by plaintiff was by the carrier itself. At least, said decision did not attempt to distinguish between a case of embezzlement by an employe and a conversion by the carrier." Thus recognizing the distinction as to a conversion by the carrier and one by the servant for his own individual purposes, as we have hereinbefore endeavored to point out, and which was also done in the Moore case *supra.*

Without further elaboration we have come to the conclusion which seems inevitable from the brief analysis of the law we have attempted to make that defendant can not be held liable in this case under its contract of ship-

ment by virtue of its common-law liability, because of the reasons hereinbefore discussed.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial, and if the evidence upon another one is substantially the same a directed verdict will be given for a recovery in favor of plaintiff for the sum of $100.00, and like direction to find for defendant in excess thereof, and for further proceedings consistent with this opinion.   Whole court sitting.