## Thomas Forman Company v. Owsley County Deposit Bank

(Decided November 13, 1928.)

### Appeal from Owsley Circuit Court.

1. Witnesses.—In action by bank on note and to foreclose mortgage, defended on ground that note was paid through bank cashier, testimony by cashier and directors of bank as to transactions with maker of note, tending to show agreement with maker to pay debt when title to certain property was perfected, was properly excluded, where maker was dead at time testimony was offered.

2. Banks and Banking.—Where bank, holding note secured by mortgage, was not in real estate business or connected in any way with transaction between its cashier and maker of note, evidence that cashier agreed with maker to pay note as part of consideration for real estate transaction, but that bank retained note, and did not have notice of agreement, showed cashier was acting individually, and was insufficient to constitute cashier agent of bank in collection of note or to estop bank from enforcing note and mortgage against transferee of property with knowledge of record mortgage.

BEATTY & BEATTY for appellant.

C. W. HOGG and E. B. ROSE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

On the 11th day of June, 1910, Perry D. Burns executed a note payable to the Owsley County Bank for the sum of $675, and simultaneously therewith he and his wife executed a mortgage on certain lands to secure the payment of the note, and this was duly recorded on June 24, 1910. Burns and wife conveyed this land to T. C. Fuller, who in turn conveyed it to the Thomas Forman Company. In August, 1914, the bank filed suit against Perry D. Burns and wife and the Thomas Forman Company to collect its debt. Issues were joined, and some proof taken, but, pending the action, Perry D. Burns died, and the time for revivor passed without further action. Whereupon the bank dismissed that action without prejudice, and instituted the present action in October, 1925, in which it sought to recover the debt from the heirs of Perry Burns and to enforce its lien upon the land which is still owned by the Thomas Forman Company. The latter company answered, pleading payment by Perry Burns to the bank through its cashier, T. C. Fuller; and also relying on an estoppel. Issues were joined, proof was taken, and, on final submission, judgment was rendered in favor of the bank, enforcing its lien against the land, and awarding personal judgment against the Burns heirs for costs only. Thomas Forman Company appeals.

It appears in evidence that T. C. Fuller was instrumental in organizing plaintiff bank and became its cashier in 1904, which position he held until November 14, 1913, during which time he was active in its management. However, the bank had a board of directors who met from time to time and were consulted. Fuller was also engaged in other business, and not unduly ethical. About the year 1910 he entered the real estate business, and from time to time secured options on 5,500 acres of land, 3,500 of which he later sold to the Forman Company. On October 16, 1911, he entered into a written contract with Perry Burns whereby he agreed to pay him at the rate of $8 per acre for so much of his land as Burns could convey by marketable title. When acreage was ascertained, Fuller was to pay cash $200 and pay the

Owsley County Bank notes; the remainder to be paid when the title was perfected. Burns employed an attorney to make an abstract who approved the title to 406 acres of land, and on April 17, 1913, Burns and wife made a deed to Fuller therefor. During this period Fuller had been making payments to Burns, and, on the 27th of June, 1913, executed a written settlement with him. It was recited in this settlement that the title to the land had been abstracted, surveyed, and title approved to 403 acres; that, in a dispute with one Daniels, Burns had agreed to assign to Daniels 20 acres of the boundary. Fuller had purchased the Daniels boundary, and this amount was deducted from the Burns boundary, leaving him 386 acres and a fraction, which, at $8 per acre, amounted to $3,094. There was also another small part in dispute, of the value of $400, for which Fuller executed a note to be paid to the one entitled thereto. The remaining $2,694.16 was purported to be paid by various sums advanced by Fuller to Burns. These items included several small debts to the bank, among others a $700 note secured by mortgage, all of which were set out in writing.

On the 14th of November, 1913, Fuller resigned as cashier. On January 6, 1914, Fuller executed deed to Thomas Forman Company for several boundaries, including the Burns land. On the 28th of March, 1914, the deed from Burns to Fuller was recorded, and on the 24th day of that month the deed from Fuller to Forman was lodged for record. On August 20, 1914, Fuller wrote a long letter to the Forman Company, referring to certain things it was essential for him to do in order to perfect the title he had conveyed, and stated the Perry Burns mortgage would be released. Several indictments were returned against Fuller for misconduct in the bank, but none of these came to trial. Fuller and several of the directors testified as to transactions with Burns, tending to show that Fuller's agreement was merely to pay Burns' debt when the title to his property was perfected, and Fuller denied that it had been perfected. The court properly sustained an objection to this testimony, as Burns was dead at the time it was offered to be introduced. The present assistant-cashier, who was bookkeeper at the time of this transaction, testifies as to attesting the written settlement between Burns and Fuller, and says the directors were advised of this, and

insisted upon Fuller paying it, and that it was understood that he would do so.  He says:

> "Well, Mr. Hughes (the bank president) got after Mr. Burns and Mr. Burns told him he made a settlement with Mr. Fuller and that note would be taken out by Mr. Fuller and paid by him, and then Mr. Hughes got after Mr. Fuller, and Mr. Fuller said he would make a settlement with him and pay it."

He admits, however, that the bank did not release Burns, but, on the contrary, retained the note, and shortly afterwards sued Burns on it.

It is strenuously argued that Fuller was practically in complete control of the bank and acting in his official character when dealing with Burns, and, as he had indicated the payment of the note in the written settlement, it must be assumed that he represented the bank in so doing, and thereby released Burns from further liability.

It will be noted, however, that the bank was not in the real estate business, or connected in any way in the transaction between Burns and Fuller.  Its name does not appear on any of the papers, and Fuller did not give any receipt for the bank, or assume to act for it.  True, he was agreeing with Burns to pay his note as a part of the consideration for the land, and in his written settlement indicated that this had been done.  But the bank retained the note, and none of its officers had any notice of this agreement until just before it filed its first suit, at which time Burns was claiming that Fuller agreed to pay the note, and Fuller said he would do so.  No doubt the bank was willing for Fuller to do this, but it did not release Burns or do anything to estop it from proceeding against him.  We think the evidence clearly indicates that Fuller was acting individually in his transactions with Burns;  and that it is insufficient to constitute him the agent of the bank in the collection of the note or to sustain the plea of estoppel.  Ohio Valley Banking & Trust Co. v. Citizens' National Bank, 173 Ky. 640, 191 S. W. 433.

It will further be noted that the mortgage to the bank had been recorded, and that the Forman Company had actual notice of that fact before paying Fuller, and was looking to him to have it released.  Wherefore, perceiving no error, the judgment is affirmed.