## FEDERAL DEPOSIT INS. CORPORATION v. PENDLETON.

### No. 1113.

District Court, W. D. Kentucky, at Louisville.

Oct. 30, 1939.

Wilson W. Wyatt and Baldwin C. Burnam (of Peter, Heyburn, Marshall & Wyatt), both of Louisville, Ky., for plaintiff.

Eugene Attkission (deceased), of Louisville, Ky., for plaintiff at the trial of the case.

James E. Fahey and Ernest Woodward (of Woodward, Dawson & Hobson), both of Louisville, Ky., J. H. Graham, of Greensburg, Ky., O. B. Bertram, of Campbellsville, Ky., and John L. Vest, of Walton, Ky., for defendant.

SWINFORD, District Judge.

This is an action brought by the Receiver of the Taylor National Bank of Campbellsville, Kentucky, to recover upon a $12,500 promissory note signed by the defendant, J. F. Pendleton, payable to the Taylor National Bank. The defense is that the note was without consideration.

There is some conflict in the evidence and the facts as herein set out will be considered the ruling of this Court upon those issues of fact that are in disagreement.

T. O. Morton had been the President and Cashier of the Taylor National Bank for many years. He and the members of his immediate family owned approximately 81% of the capital stock of the bank. Like many banks of this kind and in communities such as this, practically all of the affairs of the bank were left by the directors in the hands of the cashier and Morton as president and cashier dominated the board and ran the bank as a "one man bank".

When the bank closed, Morton was charged with violation of the national banking laws. Indictments were returned and after trial on some charges which resulted in verdicts of guilty, and pleas of guilty on others, Morton was sentenced to terms in federal prison, which he is serving at this time. This fact is stated as it was due to the manipulations of Morton and his efforts to secure money for his personal use that the transactions disclosed by this record were had.

On April 13, 1935, Pendleton executed to the Taylor National Bank a note for $12,500, due six months after date. This note was executed at the request of Morton and at the time Pendleton was told by Morton that it was purely an accommodation note, that he would never have to pay anything on account of it and that before using it he would see that good and sufficient collateral was placed with it. The money was credited to Pendleton's account, and simultaneously Pendleton, by various checks and counter receipts, drew the money out of the bank. It will be noted that these checks and counter receipts bear different dates, but I am of the opinion that they were all executed at the same time by Pendleton. Pendleton denies signing these checks and counter receipts or getting any of the money, but a comparison of the signatures with Pendleton's known signatures convinces me that he did sign the checks and counter receipts which drew out all of this money. A part of it went to retire other outstanding notes held by the bank which had been theretofore made at the instance of Morton under a similar "accommodation" arrangement. It may be assumed that Morton got the difference in cash.

This note was renewed four times and was found by the receiver at the time he took over the bank for liquidation. No collateral was with the note. As has heretofore been stated, Pendleton signed the note only upon the assurance of Morton that it was only an accommodation and would be supported by collateral amply sufficient to cover it and that he would never be called upon to pay the note. I am of the opinion that this is what occurred.

The defendant advances two defenses: First, that if the note was executed for the accommodation of the bank with the understanding that there was no consideration for its execution and that it would be cov-

ered by collateral and the defendant would never have to pay it, the receiver, occupying the same position as the bank before closing, would be estopped to deny this promise. Second, that if the note was executed for the accommodation of Morton, the bank would be charged with Morton's knowledge of the conditions on and purposes for which the note was signed by the defendant. That the bank had allowed Morton to be all powerful in his transactions for the bank and to become identified, by those dealing with the bank, as the alter ego of the bank. That Morton and the bank were one identity and each charged with the knowledge of the other.

■ It is a well settled principle that a receiver of an insolvent bank is a trustee for the creditors and in the absence of statute proceedings instituted by him are subject to the same defenses that might have been interposed against the bank. Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; Early v. City of Helena, Ark., et al., 8 Cir., 87 F.2d 831; Hutchinson Coal Co. v. Miller, D.C., 20 F.Supp. 718.

■ Where the bank is the accommodatee it certainly could not be heard to admit its promise to the accommodator to hold him harmless and then be allowed to recover on the accommodation note. It must be bound by its promise and where the facts disclose that such a promise is made there can be no recovery. Rankin v. City National Bank, 208 U.S. 541, 28 S.Ct. 346, 52 L.Ed. 610; Peterson v. Tillinghast, 6 Cir., 192 F. 287.

To permit one to allow a bank to handle his apparently valid obligation in this manner is certainly subject to reproach. He thus becomes an agency in assisting the bank to deceive the examiners and thereby defrauds creditors, but under certain well defined conditions recovery has been denied. In the Peterson v. Tillinghast case, supra, the decision of the Supreme Court in the Rankin case is discussed at length, and it is pointed out the opinion by Mr. Justice Holmes in the Rankin case twice called attention to the fact that counsel in the case "agreed that it was not contended that the contract was illegal because it enabled a false showing to be made of the condition of the Guthrie bank." [208 U.S. 541, 28 S. Ct. 348, 52 L.Ed. 610.] This disclaimer was regarded as having possibly affected the findings of the trial Court, and for that reason that aspect of the case was not considered. This language immediately fol-

lows (208 U.S. at page 547, 28 S.Ct. at page 349, 52 L.Ed. 610): "It would not help the plaintiff. McMullen v. Hoffman, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117."

In the Peterson v. Tillinghast case it is further pointed out [192 F. 291]: "Now, whatever effect might rightly have been accorded to the agreement of counsel in the Rankin Case not to contend that the contract between the banks was illegal, it is to be borne in mind that it was admitted by the receiver as a fact in the present case that at the date of giving the note the Ironwood Bank was 'of high reputation, and that Mr. Peterson had entire confidence in its solvency and responsibility, and that he had no reason to have any suspicion on that subject.' Can the receiver consistently both admit that there was no reason for suspicion, and insist that Peterson was bound to suspect—and so to forecast the consequences that might follow his act? There was certainly as much reason for applying a similar rule to the City Bank in the Rankin Case as there is for applying it to Peterson in this case, if indeed there was not more reason for doing so.

"Furthermore, it is to be noticed that the bank did not in fact cause the note to be discounted, and that, instead of doing so, it pursued a course not originally contemplated by the parties, and never by Peterson."

The cases in which there is an accommodation to the bank are usually those in which the paper is used by the bank to be discounted at another banking institution and have as their purpose the protection of the bank and consequently its creditors and depositors.

However, I do not think a determination of that question of law here is important as it can have no bearing on the decision in the case at bar.

I cannot agree with counsel for the defendant that the Pendleton note was given to accommodate the Taylor National Bank. I am unable to find anything in the record that warrants such a conclusion.

An examination of the cases of Andresen v. Kaercher, 8 Cir., 38 F.2d 462; Stapylton v. Teague, 5 Cir., 85 F. 407, and other cases cited by counsel for the defendant in this connection discloses that all turn upon the proposition that the accommodation paper was executed for the benefit of and to bolster the assets of the bank.

As pointed out in Stapylton v. Teague, supra, "On the undisputed facts in the

case, the notes sued on were given without consideration and for the *accommodation and advantage of the* * * * *Bank.*"

In the case at bar there was no semblance of an advantage to the bank to place with its assets a worthless piece of paper and simultaneously with that act withdraw the funds of the bank. There is nothing in this transaction that would make the credit of the bank look better to the examiners. Even assuming that the note was genuine I am unable to see how the bank had by the transaction improved its position. Certainly a note is of no greater value in the eyes of the examiners than the funds which it replaced.

The cases to which my attention has been directed and others that I have examined all deal with the proposition that the obligations even though worthless, did serve an avowed, if unworthy, purpose for the bank.

▉ Here the defendant was lending himself whether wittingly or unwittingly to the carrying out of a scheme to deplete the actual fixed assets of the bank and which he must have known was for Morton and against the bank's interest. How could he have supposed that his action was to accommodate the bank? How could taking funds out of the bank be an accommodation to the bank? He says that he did not think the note was to be used, and yet simultaneously with his execution of it he signs checks and counter receipts drawing out of the bank all of the money called for by the note. He cannot urge that he did not know the prior "accommodation" note was used when he signed a check paying it off and another check for the accrued interest. It was clearly not an accommodation to the bank.

The second proposition is more difficult. In brief, Morton was taking funds out of the bank for his own use. In order to avoid discovery he was keeping the books in balance by replacing funds with what appeared to be valid obligations of customers whose credit was unquestioned. No notice of these transactions was brought to the attention of the directors of the bank, as of course it would not be.

Morton was acting solely for himself and to defraud and steal from his principal. Pendleton enabled him to do this by signing the note and checks by which Morton acquired the funds for his personal use. Pendleton, of course, had faith in the integrity and business acumen of Morton.

He was deceived by Morton, but he cannot be heard to say that he didn't know what was being done. · He very likely didn't realize the extent of his overt acts and did them as a friend of Morton with the firm belief that Morton, a wealthy banker, as he believed him to be, would not let him lose anything. It is hard to convincingly propose that Pendleton thought it was a legitimate transaction for him to check out of the bank or very likely sign checks and turn them over to Morton, to withdraw funds from the bank, that were only subject to his check because of a worthless note which he had caused to be entered in the assets of the bank. It is more charitable to say that Pendleton never thought at all, but relied implicitly on Morton and his promise of immunity from liability. I have no doubt that this is exactly what occurred, but one cannot avoid the natural consequence of his positive acts by saying that he relied on a false friend who had promised to hold him harmless.

It is strongly and forcefully urged that even though the · accommodation was for Morton personally, that by his known and acknowledged dominance in the bank, that he spoke for the bank and that the "sole actor" doctrine should be applied. I cannot agree that this is a case in which that rather misleading and loose term has any application whatsoever.

▉ The sole actor doctrine is based on a presumption. That is that by reason of the relationship between an agent and his principal the principal is presumed to have been told everything the agent has done and presumed to have condoned all his actions and promises.

This is the category of legal reasoning in which Mr. Justice Taft places it, while sitting as Judge in the Sixth Circuit Court of Appeals. In the case of Thomson-Houston Electric Co. v. Capitol Electric Co., 65 F. 341, 343, the court speaking through Mr. Taft said: "As a general rule, the principal is held to know all that his agent knows in any transaction in which the agent acts for him. Distilled Spirits, 11 Wall. 356, [20 L.Ed. 167]. This rule is said to be 'based on the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty.' Such a presumption cannot be indulged, however, where the facts to be communicated by the agent to the principal would

convict the agent of an attempt to deceive and defraud the principal. The truth is that where an agent, though ostensibly acting in the business of the principal, is really committing a fraud, for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it."

In a concurring opinion in the same case, Judge Severens, District Judge, says: "Dahlgren had deserted his place as agent of Mrs. Read, and had taken up a position opposed to her. There could be no presumption of information of the principal through a channel which was closed, and there are no grounds for an estoppel."

■■ The sole actor doctrine rests entirely on the idea of principal and agent. That relationship cannot be said to continue after the agent begins defrauding the principal. Here Morton was embezzling the funds of his principal, the bank. The fact that he practically owned the entire stock of the bank is of no consequence in considering this question. This was a bank held open to the public for deposit of funds only by reason of the laws of the State and Federal governments. It must be dealt with as such. The sole actor doctrine cannot be strengthened by a showing of identity of ownership, but can only be sustained on the theory of principal and agent.

In the case of Kean v. National City Bank, 6 Cir., 294 F. 214, 221, there is an extended discussion and review of what it terms "the so-called 'sole actor' cases".

In addition to the idea of presumption of knowledge some courts place the theory more upon the legal identity of principal and agent. The Kean case, above referred to, quotes from Mechem on Agency, with approval, the following rule:

"Another general theory advanced to sustain the proposition that the principal is charged with notice to the agent—

" 'finds the reason of the rule in the legal identity of the agent with the principal, during the continuance of the agency, in the fact that the agent, while keeping within the scope of his authority, is as to the matters embraced within it, for the time being the principal himself, or, at all events the alter ego of the principal, the principal's other self. * * * Whatever notice or knowledge, then, reaches the agent during this time and under these circumstances, in law reaches the principal, whether it does so in fact or not.' 2 Mechem on Agency (2d Ed.) § 1805."

In another part of the opinion the court says: "Unquestionably the general rule is that notice to the agent as to any transaction within the scope of his authority is to be considered as notice to the principal. This rule is most frequently said to be 'based on the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of negotiation, and the presumption that he will perform that duty.' Distilled Spirits, 11 Wall. [356] 367, 20 L. Ed. 167. There is, however, a well-established exception to the operation of this general rule, wherever the agent is shown to have been engaged in a private enterprise for the purpose of defrauding the principal or others. Then it is said that it cannot be presumed that the agent will communicate to the principal the facts which would convict the agent of an attempt to deceive and defraud the principal. Thomson-Houston Electric Co. v. Capitol Electric Co. [6 Cir.], 65 F. [341] 343, 12 C.C.A. 643."

■ The sole actor doctrine contemplates that the agent must have ostensibly at least endeavored to benefit his principal and even though he did not do so and his acts were for his personal benefit, possibly through defalcation, the third party who had obligated himself must have been under the impression that he was dealing with the principal. In other words, if the proof shows that the third party was dealing with the agent for what he believed to be the benefit of the principal, even though it may not have in fact been for the principal, the principal is bound by the knowledge of the agent. But, if the facts show that through all the dealings the third party knew or must have known by the very nature of the transaction that the principal could not have had knowledge of what was taking place he cannot be heard to charge the principal with knowledge. Munroe v. Harriman et al., 2 Cir., 85 F.2d 493, 111 A. L.R. 657.

In Merchants' National Bank of Kansas City v. Lovitt, 114 Mo. 519, 21 S.W. 825, 826, the court said: "An officer of a banking corporation has a perfect right to transact his own business at the bank of which he is an officer, and in such a transaction his interest is adverse to the bank, and he represents himself, and not the bank. The law is well settled that when an officer of

a corporation is dealing with it in his individual interest the corporation is not chargeable with his uncommunicated knowledge of facts derogatory to his title to the property which is the subject of the transaction."

In approving this language, in Kean v. National City Bank, supra, the Sixth Circuit Court of Appeals, through Judge Hickenlooper, said:

"And this is perhaps the true basis of the court's decision in American National Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310, where it was not clear as to whether Plant, the president of the bank of deposit, was the sole actor or not. See Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956. See, also, Melton v. Pensacola Bank & Trust Co. [6 Cir.] 190 F. [126] 137, 138, 111 C.C.A. 166.

"The adoption of this principle would also harmonize with the 'sole actor' cases, the holding in the case of Brookhouse v. Union Publishing Co., 73 N.H. 368, 62 A. 219, 2 L.R.A.(N.S.) 993, 111 Am.St.Rep. 623, 6 Ann.Cas. 675, which was apparently a case of 'sole actor,' in which the corporation was relieved from liability by reason, among others, of the fact that 'the defendant was not really the principal of Moore in respect to the deposits and withdrawals of the plaintiff's money in and from its bank account; it was his agent. The transactions were solely on his account and for his benefit.' "

Counsel for the defendant urges that the receiver is impaled upon the horns of a dilemma. That if he claims Morton's acts are unauthorized he has no grounds to retain the fruits of the transaction, and on the other hand if he retains the fruits of the agent's act after knowledge of the facts, he must in fairness be charged with the agent's knowledge.

This reasoning is fallacious in two respects. In the first place the bank derived no fruits from Morton's and Pendleton's acts. It is not here seeking to retain anything, but merely to be placed in status quo, or back in the same position it was before the money was withdrawn from its assets.

In the second place there is no evidence to show that the bank ever had knowledge of the transaction. That the first information of the matter was after the bank was in receivership which resulted promptly in this action being brought by the receiver. Thomas Forman Co. v. Owsley County Deposit Bank, 226 Ky. 229, 10 S.W.2d 836.

The Kentucky Court of Appeals quotes with approval the following language stated in 21 R.C.L. 843, Paragraph 24, in the case of Illinois Cent. R. Co. v. Fontaine, 217 Ky. 211, 289 S.W. 263, 267, 52 A.L.R. 1064: "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating, or when the person claiming the benefit of the knowledge or notice or those whom he represents collude with the agent to cheat or defraud the principal."

In the case of Davidson v. First National Bank of Georgetown, 213 Ky. 417, 281 S.W. 152, 156, the court said: "The question as to what extent the knowledge of Grover is to be imputed to the bank under the situation involved here is not presented on this appeal; but upon another trial, if it should appear that Grover was acting solely for himself when he became the owner of the Davidson note, which he thereafter discounted to the bank, then the knowledge which Grover had as an individual will not be imputed to the bank, when he and the latter were dealing with each other at arm's length."

I am of the opinion that Morton instead of acting for the bank had stepped out of character as agent and was dealing with the bank at arm's length. Merely using his position in the bank to take from it its liquid assets. The bank cannot be charged with knowledge of promises which he made to Pendleton to invoke and carry out his fraudulent scheme. As has been pointed out, Pendleton by his acts assisted in the fraud. Unknowingly, I am sure, but nevertheless to the detriment of the bank. This is not a case in which to apply the sole actor doctrine.

There should be judgment for the Plaintiff.

Proper findings of fact, conclusions of law and judgment should be submitted.